**UNITED STATES, Appellee,**

v.

**Major Vincent J. VIVERITO, 090–42–1821, United States Army, Appellant.**

**ACMR 9003303.**

U.S. Army Court of Military Review.

28 Feb. 1992.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Tamela J. Armbruster, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC, Captain Donna L. Barlett, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

In accordance with his pleas, the appellant was convicted by a military judge sitting as a general court-martial of wrongful appropriation and fraud against the United States, in violation of Articles 121 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 932 (1982) [hereinafter UCMJ], respectively. The military judge sentenced the appellant to be dismissed from the service and to pay a fine of $60,000.00, and, if the fine was not paid, to be confined for three years. On 12 February 1991, the convening authority approved the sentence and required that the fine be paid not later than 1 July 1991.[1]

---

1. On 6 September 1991, the convening authority issued General Court–Martial Order Number 8, in which it appears he intended to amend his original action by approving only so much of the sentence as provides for dismissal and confinement for eighteen months, and to defer service of the sentence to confinement until the conviction is final, unless sooner rescinded by

The appellant was charged with, *inter alia*, larceny of $63,150.97 from the United States Government, in the form of unauthorized basic allowance for quarters (BAQ) and variable housing allowance (VHA) payments, between 8 August 1983 and 30 March 1990. The appellant was also charged with submitting fraudulent VHA certificates at various locations during the same time period in which the alleged larcenies occurred. The defense successfully invoked the statute of limitations as to all payments alleged to have been made prior to 18 June 1985, thus reducing the amount of unauthorized payments to the appellant to $48,667.65. During the providence inquiry the military judge determined that a plea of guilty to larceny could not be providently entered but did accept, in the alternative, a plea to wrongful appropriation.

The record reveals that prior to August 1983, the appellant was receiving BAQ and VHA allowances because he owned a home in Seldon, New York. Although the record does not state whether the appellant and his family were living in the home, we assume they were. Normally, servicemembers who do not reside in government housing are entitled to receive such allowances. In August 1983, the appellant was assigned to the Long Island Recruiting Battalion at Fort Hamilton, New York. The appellant and his family then moved into government quarters at Mitchell Field, New York (an old Air Force base then under the operational control of the Navy) and thus became ineligible for the allowances. Nevertheless, because of oversight or inaction by officials at the housing office or Army Finance Office, the appellant continued to receive payments for the allowances.

In October 1983, the appellant's pay voucher reflected that he was still receiving the housing allowances so he informed a sergeant in his unit responsible for personnel matters and requested that the matter be corrected. The matter was not corrected, and in February 1984, the appellant again requested, through his unit personnel

office, that the matter be resolved. However, in spite of the sergeant's assurance that the matter would be taken care of, the appellant continued to receive unauthorized payments through March 1990.

Realizing that he would eventually be required to reimburse the government, the appellant transferred, each month, a sum equal to the unauthorized payment from his checking account into a separate account. In late 1987, the appellant initiated an allotment so that he would not have to make the cash transfers himself. Later still in 1987, the appellant began using the segregated funds for his personal benefit, but was still mindful that he would eventually be required to reimburse the government.

In September 1988, temptation overcame wisdom when the appellant falsely certified to military authorities that he was still living in civilian housing and thus entitled to BAQ and VHA. The appellant stated that he did this in order to conceal the fact that he was not entitled to the housing allowances. The submission of the false certificate had the effect of perpetuating the unauthorized payments.

The appellant now contends that his pleas of guilty were improvident and that the fine and the provision for confinement for nonpayment, as approved by the convening authority, violate the sentence limitations provided for in his pretrial agreement with the convening authority. We agree in part.

■■■■ We note first, that in view of our holding in *United States v. Watkins*, 32 M.J. 527 (A.C.M.R.1990), the initial receipt and retention of the funds by the appellant would not, as a matter of law, have been categorized as criminal and would not have supported a plea of guilty of wrongful appropriation. Likewise, the filing of the false housing certificate by the appellant in September 1988, would not make him criminally liable for any payments received prior to that date. The appellant neither wrongfully obtained the payments nor possessed a fiduciary duty to return or report them at

---

competent authority. While we question the validity of this. remedial order, our decision

renders the issue moot and we need not address it in this opinion.

the time they were made to him. *See United States v. Dean*, 33 M.J. 505 (A.F.C.M.R. 1991); *United States v. Blackshire*, 33 M.J. 501 (A.F.C.M.R.1991); *United States v. Harrison*, 32 M.J. 1027 (A.F.C.M.R.1991); *Watkins*, 32 M.J. 527.

■ Although the appellant became indebted to the government for the payments he received prior to September 1988, his obligation to make repayment constitutes a civil liability and does not equate to the criminal offense of wrongful appropriation under Article 121, UCMJ. *See United States v. Mervine*, 26 M.J. 482, 484 (C.M.A. 1988); *Dean*, 33 M.J. at 511; *Watkins*, 32 M.J. at 529; *United States v. Johnson*, 30 M.J. 930, 939 n. 8 (A.C.M.R.1990). "A debtor does not withhold specific property from the possession of a creditor by failing or refusing to pay a debt, for the relationship of debtor and creditor does not give the creditor a possessory right in any specific money or other property of the debtor." Manual for Courts–Martial, United States, 1984, Part IV, para. 46c(1)(b) [hereinafter MCM]; *see Mervine*, 26 M.J. at 484.

■ Although we find the appellant's plea of guilty improvident as to the payments received prior to September 1988, we find provident his plea of guilty of wrongfully appropriating the remaining payments by false pretenses. MCM 1984, Part IV, para. 46c(1) provides, in part, that:

[A]n obtaining of property from the possession of another is wrongful if the obtaining is by false pretenses....

A false pretense is a false representation of past or existing fact.... Although the pretense need not be the sole cause inducing the owner to part with the property, it must be an effective and intentional cause of the obtaining....

The offense of [wrongful appropriation] requires that the ... obtaining ... be accompanied by an intent [to temporarily] deprive or defraud another of the use ... of [the] property.

■ Thus, in order for the appellant's plea to be legally sufficient, the evidence must establish that he intentionally used a false pretense which effectively caused him to wrongfully obtain BAQ and VHA payments. In the instant case, the evidence elicited during the providence inquiry showing that the appellant intentionally submitted a false housing certificate in September 1988 in order to avoid detection of payments he knew to be unauthorized, and which had the effect of continuing those payments, convinces us that, not only did the requisite false pretense exist at the time the subsequent payments were obtained, but that sufficient evidence of the requisite criminal *mens rea* on the part of the appellant was also present.[2] Accordingly, we find that the military judge properly accepted the appellant's plea to wrongful appropriation as to payments received after September 1988.[3]

■ The appellant next argues that the convening authority erred in approving the adjudged fine as the appellant's pretrial agreement did not specifically provide for imposition of a fine and the military judge failed to advise the appellant during the providence inquiry that a fine could be imposed. We agree.

The appendix to the pretrial agreement contains two paragraphs relevant to our decision:

2. The Convening Authority agrees to disapprove any sentence in excess of the following:

2. We are cognizant of the theory that a wrongful obtaining may also be proven when an accused fails to correct a previous representation of status entitling him to additional allowances or payments. However, such a failure to correct must be accompanied by the requisite criminal *mens rea* at the time of the obtaining. Based on the appellant's efforts in twice attempting to correct this matter through proper channels and in initiating an allotment to transfer cash equal to the unauthorized payments

into a segregated account, we find the appellant lacked the required criminal intent necessary to be found guilty under this theory as to those payments received prior to September 1988. *See Dean*, 33 M.J. at 510, 511.

3. The appellant received approximately $17,922.26 in BAQ and VHA payments between 28 September 1988 and 30 March 1990.

Dismissal, total forfeiture of all pay and allowances, and confinement for 18 months.

. . . .

4. The Convening Authority may approve any other sentence lawfully adjudged.

The government argues that this language "specified that the convening authority could approve *any other* sentence lawfully adjudged, limiting only certain specified provisions, and appellant confirmed that he understood that a fine could be approved in this context."

In an earlier case involving this precise issue, this court held that "the analysis utilized by the Court of Military Appeals in *United States v. Williams*, 18 M.J. 186 (C.M.A.1984) is controlling." *United States v. Morales–Santana*, 32 M.J. 557 (A.C.M.R.1990). In *Williams*, the Court of Military Appeals held that:

> Unless the pretrial agreement specifically mentions the possibility of a fine or there is other evidence that the accused was aware that a fine could be imposed, a general court-martial may not include a fine in addition to total forfeitures in the guilty-plea case unless the possibility of a fine has been made known to the accused during the providence inquiry.

*Id.* at 189; *accord Morales–Santana*, 32 M.J. 557; *United States v. Gibbs*, 30 M.J. 1166 (A.C.M.R.1990). As the military judge failed to advise the appellant during the providence inquiry that a fine could be imposed and the pretrial agreement did not specifically provide that a fine could be imposed, we must set aside the convening authority's action in approving the fine.

In view of our decision to set aside the fine, there can be no imposition of confinement to enforce payment thereof. Therefore, we need not address the appellant's remaining assignment of error.

The court affirms only so much of the findings of guilty of Charge I and its Specification as finds that the appellant did, between September 1988 and 30 March 1990, wrongfully appropriate $17,922.26, in violation of Article 121, UCMJ. The remaining finding of guilty is affirmed.

Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms only so much of the sentence as provides for a dismissal.

Senior Judge JOHNSON and Judge GRAVELLE concur.