UNITED STATES

v.

**Goldie MOSLEY, 080 58 5788 Private (E–1), U.S. Marine Corps.**

**NMCM 90 3625.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 June 1990.

Decided 10 July 1992.

LT Peter Van Hartesveldt, JAGC, USNR, Appellate Defense Counsel

LT Kirk A. Ludwig, JAGC, USNR, Appellate Government Counsel

Before STRICKLAND and ORR, Senior Judges, and MOLLISON, Judge.

MOLLISON, Judge:

The appellant was tried by a military judge sitting alone as a general court. Contrary to her pleas, the appellant was convicted of unauthorized absence, signing a false official statement, larceny, and presenting a false claim in violation of Articles 86, 107, 121, and 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 907, 921, 932, respectively. The appellant asserts two errors were committed in her court-martial.[1] The first assignment of error concerns the transcription of the military judge's sentence. The second concerns the sufficiency of the proof as to the larceny and false claim offenses. We find no merit in the first assignment of error; however, we find merit in the second and take appropriate remedial action.

*Was the Appellant Sentenced to Confinement?*

According to the transcript of the appellant's court-martial, the military judge announced the appellant's sentence as follows: "To pay a fine of $253.66; forfeiture of all pay and allowances for a period of 15 months; to be discharged from the service with a bad conduct discharge."[2] Record at 547. Therefore, according to this portion of the transcript, the military judge did not announce confinement as a part of the appellant's sentence. The transcript further reflects, however, that immediately after the announcement of sentence the military judge stated the following: "And in the event of your continued good conduct, I recommend that the convening authority suspend confinement in excess of nine months." *Id.* The staff judge advocate's post-trial recommendation to the convening authority, trial defense counsel's reply thereto, the appellant's post-trial clemency petition, and the court-martial order all reflect that the appellant's sentence included 15 months confinement. Rules for Courts–Martial (R.C.M.) 1105, 1106 and 1114, Manual for Courts–Martial (MCM), United States, 1984. The appellant now claims *"in fact* the military judge ordered no confinement." Brief for Appellant at 2 (emphasis added). Subsequent to the discovery of the apparent omission in the record of trial, the Government moved to attach the military judge's certificate of correction and the affidavit of the court reporter[3] to correct the announcement of sentence in the record of trial to read "forfeiture of all pay and allowances; confinement for a period of 15 months," vice "forfeiture of all pay and allowances for a period of 15 months." The Government also moved to attach trial

---

1. I. THE COURT–MARTIAL ORDER INCORRECTLY STATES THAT APPELLANT WAS SENTENCED TO FIFTEEN MONTHS CONFINEMENT WHEN IN FACT THE MILITARY JUDGE ORDERED NO CONFINEMENT.
II. THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT [OF] SPECIFICATION 2 UNDER CHARGE IV AND CHARGE III AND THE SPECIFICATION THEREUNDER.

2. Customarily forfeiture of all pay and allowances is not awarded for a period of time, *United States v. Jones,* 34 M.J. 899 (N.M.C.M.R. 1992); Rule for Courts–Martial (R.C.M.) 1003(b)(2), Manual for Courts–Martial, United States, 1984, however, when total forfeitures are awarded for a specified period of time, that limitation must be given effect. *United States v. Tuttle,* 32 C.M.R. 686 (N.B.R.1962). As we note *infra,* the appellant was in fact sentenced to total forfeitures without any limitation as to duration.

3. The court-martial was conducted at Marine Corps Air Station, Kaneohe Bay, Hawaii. The record of trial was authenticated by the court reporter because "[t]he military judge returned to Reserve duties on the mainland, and the trial counsel [had] since been released from active duty." Record at Authentication pages; Art. 54(a), UCMJ, 10 U.S.C. § 854(a); R.C.M. 1104 and Discussion.

defense counsel's post-trial letter declining comment on the proposed correction.

Authenticated records of trial may be corrected to reflect what actually transpired at trial. R.C.M. 1104(d). Such correction may occur during appellate review of the case. *United States v. Anderson,* 12 M.J. 195 (C.M.A.1982); *United States v. McLaughlin,* 18 C.M.A. 61, 62, 39 C.M.R. 61, 62 (1968). An inaccurate transcription of the announced sentence may be corrected. *Cf. United States v. Hollis,* 11 C.M.A. 235, 29 C.M.R. 51 (1960); *United States v. Nicholson,* 10 C.M.A. 186, 27 C.M.R. 260 (1959). Certificates of correction and post-trial affidavits may be used to correct records of trial; however, certificates of correction are preferred over affidavits.[4] *United States v. Strahan,* 14 C.M.A. 41, 33 C.M.R. 253 (1963) (distinguishing *United States v. Solak,* 10 C.M.A. 440, 28 C.M.R. 6 (1959)).

The appellant opposes the attachment of any of these documents. Citing R.C.M. 1104(d), she claims the record of trial must first be returned to the convening authority before the record may be corrected.[5] R.C.M. 1104(d), however, provides that the record *may* be returned to the convening authority for this purpose. We believe a Court of Military Review has discretion to accept certificates of correction and affidavits in cases such as these without returning the record to the convening authority, provided the appellant is afforded reasonable access to the reporter's notes or tapes of the proceedings and an opportunity to be heard. *Anderson;* R.C.M. 1104(d)(2). The objective is to ensure this Court acts on an *accurate* record of trial. Appellant's counsel, both trial and appellate, have been given the opportunity to be heard on the matter of the proposed correction. Neither questions the accuracy of the correction. Neither has complained of a lack of access to the reporter's notes or tapes. Therefore, compliance with the process envisioned in R.C.M. 1104(d) and *Anderson* has been achieved.

Appellant also asserts our acceptance of the correction would be contrary to the holding in *United States v. Baker,* 32 M.J. 290 (C.M.A.1991). In *Baker* the Court of Military Appeals held that when a lawful sentence is announced by a court-martial, it may not be "corrected" upward after adjournment of the court no matter what the members or military judge intended to announce. *Baker,* 32 M.J. at 293; *see also Hollis; Nicholson.* Here we are not concerned with what the military judge meant to announce, but rather what he *in fact* announced. *Baker* is clearly distinguishable. We accept the correction to the record.[6] Appellant's first assignment of error is without merit.

### *Was the Appellant's Guilt Proven Beyond a Reasonable Doubt?*

■ This Court may affirm only such findings of guilty as it finds correct in law and fact. Art. 66(c), UCMJ, 10 U.S.C. § 866(c). It must reverse those findings of guilty it finds incorrect in law or fact. *United States v. Gordon,* 2 C.M.A. 632, 10 C.M.R. 130 (1953). For purposes of determining factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). In her second assignment of error, the appellant claims her guilt as to the larceny and false claim offenses was not proven beyond a reasonable doubt. We agree.

The appellant was charged with wrongfully obtaining by false pretenses a Varia-

---

**4.** In this case the affidavit was subscribed by the court reporter who authenticated the relevant portion of the record of trial, and therefore, it is the functional equivalent of a certificate of correction. In any event, the same information has been submitted to the Court by means of a certificate of correction subscribed by the military judge.

**5.** Appellant also opposes remand to the convening authority.

**6.** The Government's motions to attach documents respecting the correction of the announcement of the sentence in the record of trial are granted.

ble Housing Allowance (VHA) and presenting a false VHA claim.[7] The Government contended the appellant had fraudulently obtained VHA at a rate applicable to servicemembers with dependents, whereas she was only entitled to receive VHA at a rate applicable to servicemembers without dependents. It is further contended the appellant had defrauded the United States in an amount represented by the difference between the two rates.

The evidence showed the appellant was married, was stationed in Hawaii, and had drawn VHA at the with-dependents rate for that location. It also showed the appellant's dependent, her husband, did not reside in Hawaii and had never been to Hawaii during any relevant period of time. Because the appellant was married, the Government sought to establish that the appellant was not entitled to VHA at the with-dependents rate on two grounds: 1) the appellant's husband was not her dependent because she was not in fact supporting him, and 2) her husband did not reside with the appellant in Hawaii.

The military judge rejected the non-support/dependency status theory, but accepted the theory that the appellant was not entitled to VHA because her husband did not reside with her in Hawaii. Specifically, he found the appellant guilty of larceny of $253.66 from the United States in August and September 1988. That figure represents the difference between VHA at a with-dependents rate and VHA at a without-dependents rate for appellant's location for those two months. Prosecution Exhibit 17. By exceptions and substitutions, the military judge also found the appellant guilty of presenting a false VHA claim on 14 December 1988. In doing so, the military judge eliminated language in the false claim specification alleging the appellant had misrepresented her husband's status as a dependent. Thus, the military judge found the appellant had presented a false and fraudulent VHA claim on 14 December

1988 only by misrepresenting her husband resided with her in Hawaii. Record at 533–34. Commendably, the military judge explained his findings, saying, "Basically, just in a nutshell, the court didn't find the accused guilty of anything related to an understanding of dependency. These were related to on-island wages, VHA, in a nutshell." Record at 535.

The military judge's findings respecting the question of dependency are supported by two recent decisions of this Court in which we held that a married servicemember's entitlement to VHA at a with-dependents rate was statutory and that subsequent mis- or mal-application of the funds is a matter for state or administrative law until the UCMJ makes non-support of dependents an offense. *United States v. Tatum*, 34 M.J. 1115 (N.M.C.M.R.1992); *United States v. Roberts*, 33 M.J. 819 (N.M.C.M.R.1991).

■ Before the obtaining of property of another is an offense in violation of Article 121, the obtaining must be wrongful. MCM, Part IV, ¶ 46c(1)(d). Obtaining of property of another is wrongful if done by false pretense. *Id.*

> The false pretense may be made by means of any act, word, symbol, or token. Although the pretense need not be the sole cause inducing the owner to part with the property, it must be an effective and intentional cause of the obtaining. A false representation made after the property was obtained will not result in a violation of Article 121.

MCM, Part IV, ¶ 46c(1)(e); *United States v. Rodriguez*, 24 C.M.R. 687, 689 (A.F.B.R. 1957); *United States v. Turner*, 23 C.M.R. 674, 677 (C.G.B.R.1957). "Conviction of the crime of false pretenses requires a showing that certain false representations were made which were relied upon by the victim and that there was a causal relation between the representation made and the delivery of the property." *United States*

---

**7.** VHA was conceived as a means of assisting servicemembers to defray housing expenses in high cost areas. Servicemembers stationed in Alaska and Hawaii were included in the program in 1985. Department of Defense Authorization Act, 1985, Pub.L. 98–525, § 602(d)(1), 98 Stat. 2534 (1984) (codified as amended at 37 U.S.C. 403a (1988)); H.R.Rep. 691, 98th Cong., 2d Sess. 256 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 4174, 4213.

*v. Hildebrand,* 2 C.M.R. 382, 384 (A.B.R. 1952).

In support of its case, the Government introduced four documents: a Command Sponsorship of Dependents Request, dated 2 July 1988 (Prosecution Exhibit 1); a Dependency Application, dated 18 October 1988 (Prosecution Exhibit 2); a VHA application, dated 14 December 1988 (Prosecution Exhibit 3); and an application for a Cost of Living Allowance, dated 18 October 1988 (Prosecution Exhibit 4). Prosecution Exhibits 2 through 4 all postdated the alleged wrongful obtaining and therefore could not have been the false pretense whereby VHA was wrongfully obtained in August and September 1988. Only Prosecution Exhibit 1, the Command Sponsorship Request, predates the obtaining. Unquestionably, the appellant misrepresented on the Command Sponsorship Request (Prosecution Exhibit 1) that her husband was with her in Hawaii.[8] But the record is devoid of any evidence or explanation of how the filing of this false document effectively caused the United States to pay the appellant VHA at any rate. The VHA application (Prosecution Exhibit 3), itself, was filed in December of 1988, and therefore was not the effective cause of the VHA payments in August and September of 1988.[9] *United States v. Viverito,* 34 M.J. 872 (A.C.M.R.1992) (accused was not guilty of wrongfully appropriating unau-

thorized VHA payments received prior to submission of a false VHA certificate). We also note that the appellant had been receiving VHA at the with-dependents rate for the same location prior to filing the Command Sponsorship Request (Prosecution Exhibit 1). Prosecution Exhibit 15 (Leave and Earnings Statements (LES's)) and Prosecution Exhibit 17 (a synopsis of LES's).

■ The appellant's conviction of presenting a false VHA claim was on the basis she fraudulently misrepresented her dependent's location in the VHA application (Prosecution Exhibit 3) on 14 December 1988.[10] Before she could be found guilty of this offense, the Government was required to prove the claim was false or fraudulent in certain particulars. MCM, Part IV, ¶ 58b(2)(b). False and fraudulent claims include not only those containing some material false statement, but also claims which the claimant knows the claimant is not authorized to present or upon which the claimant knows the claimant has no right to collect. MCM, Part IV, ¶ 58c(2)(a). An untrue representation must be of a material fact. *Cf. United States v. Ward,* 16 M.J. 341, 345 (C.M.A.1983).

■ The VHA application form is not a picture of clarity, and there is nothing in the record indicating what instructions the

---

8. The signing of this false document was the basis for the offense alleged in Specification 2 of Charge II, alleging a violation of Art. 107. The appellant was properly found guilty of this offense and does not now challenge the sufficiency of proof as to this finding.

9. As discussed *infra,* the VHA application was submitted apparently for the purpose of recording the appellant's on-island change of address. We note that in the Personnel Officer's certification block on the VHA application, the personnel officer approved the "change" effective 10 July 1988.

10. Reiterating, the December VHA application was submitted in December of 1988 and, therefore, could not have been the false pretense upon which the alleged larceny of VHA payments in August and September 1988 was based. *Viverito;* MCM, Part IV, ¶ 46c(1)(e). The offense of presenting a false VHA claim in December of 1988, however, could theoretically have

been committed even without a larceny of VHA payments months earlier. Additionally, the submission of false documentation to confirm the approval and allowance of payments already received has been recognized as a violation of Article 132. *United States v. Ward,* 14 C.M.A. 3, 33 C.M.R. 215 (1963) (submission of false parachute jump manifests to confirm entitlement to jump pay that had already been received constituted the offense of presenting a false claim for approval and allowance). Thus, the offense of larceny (Article 121) and the offense of presenting a false claim (Article 132) differ. For the offense of larceny, the false pretense must induce the payment of benefits and therefore must precede, or be contemporaneous with, payment. *Viverito;* MCM, Part IV, ¶ 46c(1)(e). *See also United States v. Mervine,* 26 M.J. 482 (C.M.A.1988) (a debt cannot be the subject of larceny under Article 121). Contrarily, the postpayment submission of false documents and claims may constitute the offense of presenting a false claim. *Ward.*

appellant was given in connection with filling it out. It appears she was filing the form to reflect a change in address in Hawaii. The appellant was given three choices on the form for claiming VHA: (1) for member's duty station, (2) for dependent's location, and (3) for member's duty station and dependent's location. The appellant checked the ultimate option. As to the significance of that choice, one Government witness (a noncommissioned officer and service record book chief) testified the appellant was signalling by this election that she was applying for VHA for herself. Record at 330. Blocks on the VHA application concerning housing information are incomplete. Another Government witness (a master sergeant and personnel chief) testified that there was no listing of the dependent's location on this form and there was no reason to have it listed in this case. Record at 369. No entry on the VHA application is clearly false in light of other evidence in the trial. However, if we consider the 14 December 1988 VHA application in light of other forms filed by the appellant, we see that by October 1988, the appellant was representing her husband was with her on-island only for a part of the month of July 1988. Prosecution Exhibits 2 and 3.

Assuming the VHA application constituted a representation by the appellant that her husband was on-island with her, the issue remains whether any such representation would have had any relevance to her entitlement. In other words, would such a misrepresentation have been of a material fact? In this respect the Government's personnel chief testified that a servicemember with a dependent is entitled to on-island VHA at the with-dependents rate if the servicemember was on an "accompanied tour," whether or not the dependent was actually on-island with the servicemember. The same witness explained that effectively all servicemembers with dependents were ordered to Hawaii on an "accompanied tour." More specifically, he observed that under the circumstances of this case, the location of the dependent was immaterial for VHA purposes. Record at 351, 360–61, 367–69. If this testimony is to be given

any credit, it would appear the appellant was entitled to VHA at the with-dependents rate contrary to the findings of the court. We recognize the military judge may have rejected this Government-sponsored testimony, however, we note there is no other evidence in the record as to what the appellant's VHA entitlement was.

On appeal, the Government acknowledges the importance of resolving the appellant's status and entitlement. It concedes that if the appellant was on an *accompanied* tour, she would have been entitled to VHA at the with-dependents rate for her location. In other words, the appellant would have been entitled to receive the payments she did receive. Government Brief at 3 n. 1. However, the Government also now offers extracts from the Joint Federal Travel Regulations (JTR) in an effort to show that appellant was on an *unaccompanied* tour and was entitled to VHA at the *with-dependents rate,* but for her *dependent's location* in the continental United States. The Government still maintains the appellant's correct entitlement would have been less than what the appellant received. It suggests the difference between the appellant's entitlement and what she actually received would have been some amount other than that which the military judge found, though the Government has not stated what that difference would be. Brief at 4–5.

■ We observe these extracts from the JTR on their face do not appear to be for the period of time relevant to appellant's case. Nor does the Government's position appear to square with the authorizing statute. 37 U.S.C. § 403a(a)(3). In any event, we will not assess the import of this evidence or the validity of Government's theory on appeal. "A conviction must stand or fall on the evidence admitted at trial. Recourse cannot be had to matters outside the record of trial to remove a reasonable doubt that may be left by the evidence presented at trial." *United States v. Carey,* 11 C.M.A. 443, 445, 29 C.M.R. 259, 261 (1960) (Quinn, C.J.). If the Government has failed to prove an accused's guilt beyond a reasonable doubt by evidence placed

before the trial court, it will not be permitted to mount a second offensive before a Court of Military Review. *See United States v. McDowell,* 34 M.J. 719 (N.M.C.M.R.1992). Therefore, even assuming the regulations the Government seeks to file post-trial were relevant, we would not fill in evidentiary gaps by taking notice of them for the first time on appeal. *United States v. Wootton,* 25 M.J. 917, 919 (N.M.C.M.R.1988); Mil.R.Evid. 201(c).[11]

We acknowledge facts may exist somewhere that might demonstrate the appellant was up to more mischief than the record otherwise proves and that persons knowledgeable in disbursing and administrative matters, armed with information and regulations not in the record, might discern some furtive design on her part.[12] We also acknowledge that the Government's own witnesses at trial may have been in error when they testified as to the appellant's entitlement. But a conviction may not be upheld on the basis of suspicion, conjecture, speculation or surmise. *United States v. Dickenson,* 6 C.M.A. 438, 456, 20 C.M.R. 154, 172 (1955); *United States v. Whitley,* 3 C.M.A. 639, 644, 14 C.M.R. 57, 62 (1954). A Court of Military Review must make its decision as to factual sufficiency "on the basis of the entire record." Art. 66(c), UCMJ, 10 U.S.C. § 866(c). For these purposes that means the evidence presented at trial. *United States v. Lanford,* 6 C.M.A. 371, 20 C.M.R. 87 (1955); *Carey; United States v. Whitman,* 3 C.M.A. 179, 11 C.M.R. 179 (1953); *McDowell; United States v. Toro,* 34 M.J. 506, 520 (A.F.C.M.R.1991); *Wootton.* Having examined that evidence, we find the Government failed to make its case.

Cases involving allegations of false and fraudulent claims continue to vex military trial and appellate courts. This case is only one of several such cases that have recently foundered on appeal. *E.g., Tatum; Viverito; Roberts.*[13] *See also United States v. Bost,* 34 M.J. 1094 (A.F.C.M.R.1992); *United States v. Evans,* 34 M.J. 1051 (A.F.C.M.R.1992). These cases are inevitably complex. The proof is tedious. Accordingly, they require extraordinary trial discipline. We suggest counsel should do the following:

(1) Use a trial brief;

(2) Before trial, have in hand a written, tailored listing of the elements;

(3) Before trial, annotate the list of elements with the evidence expected to be adduced to establish each of the elements;

(4) Annotate the list of the elements as the evidence is introduced to ascertain whether there is proof on each and every element;

(5) Establish on the record what the accused's specific entitlement was by intro-

11. For these reasons, the Government's motion to attach extracts from the JTR is denied.

12. We note that on 13 December 1988, the appellant certified on the reverse side of her August 1988 LES that her husband was not a member of the uniformed services and did not serve on full-time training duty with pay for the period 1 September 1987 to 31 August 1988. Prosecution Exhibit 15. The appellant's husband testified that he had been released from active duty in the Marine Corps in October 1985. Record at 390. Subsequently, he rejoined the U.S. Marine Corps Reserve and from March to July 1988, the appellant's husband was on active duty for training purposes. Record at 390, 392–93, 401–02. The LES certification, like the VHA application, post-dated the alleged larceny in August and September 1988. Because the certification post-dated the alleged larceny, it, too, could not have been the false pretense whereby the VHA allowance was obtained. The LES certification also appears to be materially false only for months preceding the months for which the appellant was found guilty of stealing the VHA allowance at the with-dependents rate. As to the false claim offense, the appellant was charged with and found guilty of presenting a false VHA application, not a false LES certification. The appellant and her husband divorced in April of 1990. Record at 389–90; Appellate Exhibit XXVI.

13. Granted the counsel here did not have the benefit of *Tatum* and *Roberts,* but even without them, the approach to the issues was desultory. Originally, the appellant was charged with a fraud in the amount of $26,000. Prior to trial the amount was amended to $18,000. As the proof developed, the amount of the alleged fraud dwindled. Prosecution Exhibit 17. Ultimately the appellant was found guilty of a fraud in the amount of $253.66. Now the Government suggests the amount is some other undetermined amount.

**700**

ducing the applicable regulations pertinent to the time;

(6) Supplement the written regulations with expert testimony that will aid the trier of fact in understanding complex entitlement regulations;

(7) Request the court to take judicial notice of the appropriate authorizing statute upon which the party relies, e.g., 37 U.S.C. § 403a;

(8) Adduce with specificity what the accused actually received or would have received if the claim had been honored;

(9) Demonstrate with specificity the difference between what the accused was entitled to receive and what the accused actually received or would have received if the claim had been honored;

(10) Establish how various documents signed or filed by the accused relate (or do not relate) to what the accused obtained or tried to obtain;

(11) Show whether any alleged misrepresentations are material, that is whether the misrepresentation induced or could induce the approving authority to allow the claim; and

(12) Articulate a concise theory of the case.[14]

We believe that by approaching these complex cases in a systematic, disciplined fashion, the issues will be focused, confusion will be minimized, gaps in the case will be addressed, records of trial will be reduced in length, appellate review will be speeded, and, most importantly, servicemembers may be spared unwarranted prosecution or an unsupported conviction.

Accordingly, the findings of guilty of Charge III and the Specification thereunder and Charge IV and Specification 2 thereunder are set aside. Charge III and the Specification thereunder and Charge IV and Specification 2 thereunder are dismissed. The remaining findings are affirmed. The sentence has been reassessed in accordance with *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Upon reassessment, only so much of the adjudged sentence as provides for confine-

ment for a period of six months, forfeiture of $482.00 pay per month for a period six months, and a bad-conduct discharge is affirmed.

Senior Judges STRICKLAND and ORR concur.

14. We also suggest military judges consider ordering bills of particulars to focus the issues.