**UNITED STATES**

v.

**Jaimy B. HILL, 382–88–2459, Radioman Seaman Recruit (E–1), U.S. Navy.**

**NMCM 92 1722.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 27 April 1992.

Decided 30 Nov. 1993.

LT Darryl G. Geary, JAGC, USNR, Appellate Defense Counsel.

LCDR J.A. Fabian, JAGC, USNR, Appellate Government Counsel.

LT David K. Herlihy, JAGC, USNR, Appellate Government Counsel.

Before EDWIN W. WELCH, C.J., and R.M. MOLLISON and R.A. JONES, JJ.

MOLLISON, Senior Judge:

The principal issue in this appeal from a special court-martial conviction for wrongful use of marijuana is whether the Government proved that the positive urinalysis results upon which the conviction was based applied to a urine specimen submitted by the appellant. We conclude that the Government failed in its proof and reverse.

The appellant was tried by special court-martial. Contrary to his pleas, officer members found the appellant guilty of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The members sentenced appellant to confinement for three months, forfeiture of $500.00 pay per month for three months and a bad-conduct discharge. The convening authority approved the sentence without modification. The appellant's court-martial is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866.

The appellant filed four assignments of errors in connection with his court-martial proceedings. Those assignments of error have previously been resolved adversely to the appellant. *United States v. Weiss*, 36 M.J. 224 (C.M.A.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Graf*, 35 M.J. 450 (C.M.A.1992); *United States v. Mitchell*, 37 M.J. 903 (N.M.C.M.R.1993). They will not be discussed further. However, we will discuss the following issues the Court specified for briefing by the parties:

I. WHETHER EVIDENCE ADMITTED ON THE MERITS SHOWS THAT THE URINE SPECIMEN THAT TESTED POSITIVE FOR THE PRESENCE OF A MARIJUANA METABOLITE BELONGED TO THE APPELLANT? [Citations omitted.]

II. WHEN DETERMINING WHETHER THE APPELLANT'S GUILT HAS BEEN PROVEN BEYOND A REASONABLE DOUBT, MAY THIS COURT CONSIDER THE FIRST PAGE OF THE CHARGE SHEET OR EVIDENCE ADMITTED ONLY DURING THE PRE-SENTENCING PROCEDURE? [Citations omitted.]

*The Material Facts.*

The Government attempted to prove the appellant's guilt by positive urinalysis results. The Government's case-in-chief was brief. It included two stipulations of fact, a urine specimen bottle, a urine sample custody document, laboratory reports, and the testimony of a laboratory official. The first stipulation of fact showed that a random urinalysis had been ordered and appellant was one of 23 persons who was ordered to provide a urine specimen for this purpose. Prosecution Exhibit 7. The second stipulation of fact stated that the appellant was properly observed when he provided his urine specimen; that the unit urinalysis coordinator collected the appellant's specimen; that the appellant verified to the unit coordinator that the specimen he was submitting was his own; that the unit coordinator "successfully ensured that the procedures set forth in OPNAVINST 5350.4B, dated 13 September 1990, for the proper collection and transportation of urine specimens were followed;" that after receiving the urine specimen from the appellant, the unit coordinator properly logged all applicable identification entries and properly packaged and mailed the specimen; and, that the package arrived without damage or other discrepancy at the naval drug laboratory where it was processed according to standard procedures. Prosecution Exhibit 8. The Government also introduced, without defense objection, a urine specimen bottle. Prosecution Exhibit 9. A photograph of the bottle has been substituted in

the record of trial. The bottle in the photograph appears to have markings on it, however, they are virtually illegible, save for the number "0034." The Government's documentary evidence, also introduced without defense objection, consists of the urine sample custody document reflecting a laboratory finding of "cannabinoids" for batch number 0034, specimen number 10, social security number 382 88 2459, and laboratory accession number 341290. Prosecution Exhibit 1. Other documentation also reports a positive laboratory urinalysis finding for these numbers. Prosecution Exhibits 2 and 3. Finally, the Government elicited testimony from the executive officer of the laboratory that conducted the urinalysis. In addition to describing laboratory procedures, the executive officer testified that when specimen bottles come to the laboratory, the bottles have on them a sample number, a social security number, the initials of the donor of the specimen, and the initials of the person who observed the donor. Record at 56. The Government did not introduce the aforementioned OPNAV instruction. It also did not introduce a unit coordinator's ledger which might correlate the batch, sample and social security numbers with the donor's name, and it did not introduce any other evidence linking the urinalysis results to the appellant. However, the charge sheet, which was not before the members, and documentary evidence introduced after the findings during the pre-sentencing procedure clearly show that the relevant social security number belonged to the appellant. In its case-in-chief, the defense called one witness and read the stipulation of expected testimony of another. Neither witness provided testimony material to appellant's guilt or innocence. The appellant did not testify.

*The Law.*

■ A Court of Military Review may only affirm such findings of guilty as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c). Accordingly, this Court has the duty to determine the legal and factual sufficiency of the evidence. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in a light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Id.* The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of this Court are themselves convinced of the appellant's guilt beyond a reasonable doubt. *Id.*

■ A Court of Military Review must base its decision as to legal and factual sufficiency on the basis of the "entire record." UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Mosley,* 35 M.J. 693, 699 (N.M.C.M.R.1992) (citing cases). The "entire record" for these purposes means the evidence presented at trial. *Mosley,* 35 M.J. at 699. "A fact essential to a finding of guilty must appear in the evidence presented on the issue of guilt; it cannot be extracted from evidence presented in other proceedings in the case, although both proceedings are fully recorded and are part of the entire record of the case." *United States v. Boland,* 1 M.J. 241, 242 (C.M.A.1975) (per curiam). A transcript that provides no clue to a material fact, except that which might be inferred from a witness' appearance on the stand or the appearance of a piece of real evidence before the trial court but not described or depicted in the record of trial, furnishes no basis upon which a Court of Military Review can make an informed judgment. *See Id.* Moreover, evidentiary gaps may not be filled by the Government posttrial by resort to the expedient of judicial notice, particularly judicial notice of the contents of regulations not before the members. *Mosley,* 35 M.J. at 699; *United States v. McDowell,* 34 M.J. 719 (N.M.C.M.R.1992); *United States v. Wootton,* 25 M.J. 917 (N.M.C.M.R.1988); Mil.R.Evid. 201(c).

■ The burden is on the prosecution to prove beyond a reasonable doubt that an accused servicemember wrongfully used a controlled substance in violation of Article 112a. *United States v. Hunt,* 33 M.J. 345 (C.M.A.1991). The accused's right to attack one aspect of the prosecution's case does not relieve the prosecution of its burden to pro-

duce sufficient evidence in the first instance. *Id.*

### Application.

██ The evidence on the merits in the record now before us is both legally and factually insufficient. Nowhere does it link the sample for which positive urinalysis results were obtained to the appellant.

The Government suggests *Boland* stands for the proposition that we must limit our consideration to evidence presented on the merits *only* when determining a fact essential to a finding of guilty. However, the Government's case that the appellant wrongfully used marijuana was based solely on circumstantial evidence that a urine specimen was found to contain a marijuana metabolite. Thus, it was essential that the Government show the urine found to contain the marijuana metabolite belonged to the appellant.

The Government also seeks to establish the nexus between the appellant and the specimen by reference to the stipulations of fact and OPNAV Instruction 5350.4B. It observes the parties stipulated that the procedures of that instruction were followed. The instruction was not offered in evidence and judicial notice was not taken of its contents at trial. The Government now, in effect, requests we take judicial notice that this instruction requires the date of collection, the batch number, the specimen number, the donor's social security number, and the donor's initials to be recorded on the bottle, and further that the urinalysis ledger must include the foregoing information and the donor's signature, vice initials. Government's Brief at 3–4. We recall a unit coordinator's ledger was not introduced in evidence. In any case, the Government argues that because the unit coordinator conducted the collection process in accordance with this instruction and this instruction calls for the initialling of the bottle label by the donor, there can be no dispute the donor wrote his initials on the bottle. From the foregoing the Government argues a reasonable inference follows that the specimen tested was properly linked to the appellant.

As noted above, we may not take judicial notice of regulations post-trial in order to fill in evidentiary gaps in the Government's case. The most this record shows on the subject of donors' initials is the testimony of the laboratory executive officer wherein he testified that donor's initials do appear on the bottles when they arrive at the laboratory. There is no evidence before us that the specimen bottle in this case contained initials, but if we presume it did, we do not know what they were or whether they were legible. Nor do we know who else within the same batch may have had the same initials.

We recognize it is quite possible the appellant's initials might have been on the specimen bottle admitted in evidence and the court-members might have noted them. However, if something as tenuous as initials are the critical fact upon which the appellant's conviction hangs, this fact must be set forth in some fashion in the record to convince *this* Court of it beyond a reasonable doubt. To trust the matter solely to the trial court alone contravenes our own responsibilities and the mandates of *Boland.* Recalling we may not uphold a conviction on the basis of suspicion, conjecture, speculation, or surmise, *Mosley*, 35 M.J. at 699, we cannot affirm appellant's conviction on the Government's surmise the appellant's initials must have been on the urine specimen bottle or that evidence somewhere else must have linked the specimen to the appellant.

██ Nor do we find the absence of an objection to individual items of evidence relieved the Government from proving a fact essential to its case—that the urine specimen tested belonged to the appellant. The most that can be said of the lack of an objection is that the defense did not contest the fact that the Government's evidence was authentic and relevant, that is, that the urine specimen bottle and the reports were what they purported to be, a urine specimen bottle and laboratory reports pertaining thereto, and that they tended to make more probable the existence of a fact of consequence to a determination of the action, namely that a urine specimen contained the metabolite of a contraband substance. Mil.R.Evid. 401, 901. In other words, the evidence was properly admissible to prove the *corpus delicti* of a

crime. However, the identity of the appellant as the perpetrator is also an element that the Government was obliged to prove beyond a reasonable doubt. The lack of objection did not relieve the Government of proving that element. *See United States v. Ortiz,* 12 M.J. 136 (C.M.A.1981) (failure to object to chain of custody document permitted its consideration but the prosecution nonetheless failed to link the items possessed by the accused to the positive laboratory report). *Cf. United States v. Harper,* 22 M.J. 157, 160 & n. 2 (C.M.A.1986) (laboratory results of urinalysis linked to appellant, coupled with expert testimony, were sufficient to sustain conviction of wrongful use of marijuana).

Granted, establishing the connection between the appellant and the positive urine specimen would appear to have been simple task. But we must be faithful to *Boland* and Article 66, and the simplicity of the task does not obviate the Government's obligation to carry it out.

The findings of guilty and the sentence are set aside. The charge is dismissed.

JONES, Senior Judge (concurring in the result):

Even were I to take judicial notice of the pertinent OPNAV Instruction in order to conclude, as the dissent would have us do, that the coordinator ensured that the provider of the urine initialed the specimen bottle label, I am not ready to jump to the conclusion that appellant must have initialed "JBH;" it may as well have been "JH" or only "H." We have no indication of the clarity of the initials nor the number of individuals within the group randomly screened who had similar initials. From the record all we can glean is that all parties assumed that the test results were those of the accused, and the members, having been given the evidence, assumed that the evidence was relevant to the case they had to decide.

The Government bore the most basic responsibility—to connect appellant with the results of the testing. This could easily have been done through the urinalysis ledger or any service record entry showing appellant's social security number. This the prosecution did not do. Without that necessary connection, all of the prosecution's evidence was only conditionally relevant and should not have been permitted to go to the members.

To base a conviction on as tenuous of evidence and surmise as the Government would now have us do is too far a reach for me—ours is a system predicated not upon guilt by assumption, but upon proof beyond reasonable doubt.

WELCH, Senior Judge (dissenting):

Although sharing the majority's concern with the weakness of the Government's case in chief, I disagree with their conclusion for reasons summarized as follows.

1. Contrary to Judge Mollison's opinion, I believe that we may properly take judicial notice of the content of OPNAVINST 5350.-4B, to include the requirements in Appendix B to enclosure (4) (e.g., the requirement for the coordinator to ensure that a servicemember initial the specimen label, and the requirement for the coordinator to verify identity by looking at a picture proof of identity). Such notice is proper for two reasons. First, the content of OPNAVINST 5350.4B was not a fact of consequence to the determination of the case. For example, it was not an element of the offense. *United States v. Mead,* 16 M.J. 270 (C.M.A.1983); *United States v. Hill,* 31 M.J. 543 (N.M.C.M.R.1990). Second, the appellant stipulated that OPNAVINST 5350.4B was followed by the coordinator when the appellant provided a specimen. Pros.Exh. 8. Surely, this agreement gives us the authority to view the order. *See United States v. McCarthy,* 2 M.J. 26, 28, n. 2 (C.M.A.1976). Third, although not critical to my position on the issue of judicial notice, based on the common experience of all officers in the courtroom, I am confident that they clearly understood that the reference to the instruction meant that the Chief Crider did everything "by the book" when he took the appellant's specimen, to include having the appellant initial the bottle that held his specimen. *See United States v. Armstrong,* 9 M.J. 374, 375–76, n. 1 (C.M.A.1980). Thus, our consideration of the content of the instruction as part of the appellate review pro-

cess comports with both the basic concepts of due process of law and the expressed intentions of the parties to the trial.

2. Based on the content of OPNAVINST 5350.4B, the stipulations of fact before the court-martial (which included the appellant's first name, middle initial, and last name), the testimony of Commander Trocha noting that bottles of specimens arrive at the laboratory bearing initials, and testimony of Commander Trocha commenting on the fact that the information on the bottle shown in Pros.Exh. 9 matched that shown on the custody document, Pros.Exh. 1, and the message from the laboratory, Pros.Exh. 2, I conclude that (a) the appellant's initial's "J.B.H." were on the specimen bottle, and (b) that the court-members knew that the appellant's initials were "J.B.H."

3. The stipulations of fact and the chain of custody document presented to the court-members conveyed information indicating that 23 members of the appellant's unit provided urine specimens on 26 and 27 February 1992, that 12 of them provided specimens on 26 February 1992, that the appellant provided a specimen on 26 February 1992, that the bottle marked with initials "J.B.H." and the social security number 382–88–2459 tested positive for cannabinoids, and that the collection process was done strictly in accordance with the requirements of the applicable Navy instruction, OPNAVINST 5350.4B. To counter this evidence, the appellant presented only limited evidence proving that he frequently ate Filipino food ashore.

4. As always, counsel were given the opportunity to tell the court-members how they should evaluate the evidence. The defense counsel's opening statement began with an acknowledgment that the appellant gave a urine sample in February 1992 and that the test results came back positive. Record at 53. Then, in closing argument, the first words out of the mouth of the defense counsel are: "This is a case where, as I told you in my opening, Seaman Hill went and gave a urine sample, totally unaware that it was going to come up positive for marijuana." Record at 72. Not too surprisingly, after considering the evidence and the argument of counsel, the court-martial members found the appellant guilty as charged after being out for deliberations a total of 33 minutes. Although I realize that argument of counsel is not a substitute for evidence, I also believe that "[o]ur function is not performed in a vacuum . . ." *Id.* at 376. Thus, as was done in *Armstrong,* we should look at the entire record and determine the intention of the parties when assigning meaning to evidence within the four corners of the record.

5. Under Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), a Court of Military Review has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324 (C.M.A.1987), quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When applying this test, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993) (quoting from *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convince of the accused's guilt beyond a reasonable doubt." *Turner* at 325.

6. In my opinion, testing the evidence presented on the merits for legal sufficiency is not difficult. Considering the evidence in the light most favorable to the prosecution, I conclude that a reasonable factfinder—applying the good sense and logic that the members possessed—would most appropriately conclude that the appellant provided the specimen that tested positive for cannabinoids. Their logic would surely be:

A = The bottle with the appellant's initials on it and social security number 382–88–2459.

B = The chain of custody documents, laboratory reports, etc. showing that a specimen

collected on 26 February 1992 in the bottle (noted above as "A") tested positive for cannabinoids.

C = The stipulations showing that a relatively small unit which included the appellant submitted urine specimens to Chief Crider on 26 February 92 and that the collection and testing of the specimens was done strictly in accordance with Navy instructions.

D = The only evidence presented by the appellant could hardly be called "exculpatory," and the defense counsel does not contest the asserted fact that his client gave a urine specimen which tested positive.

Ergo, A + B + C + D = guilty beyond reasonable doubt.

7. Likewise, considering the test for factual sufficiency of the evidence, and based on similar logic, I am convinced of the appellant's guilt proved beyond reasonable doubt.

8. In reaching my conclusions concerning this case, I have considered at length both *United States v. Boland,* 1 M.J. 241 (C.M.A. 1975) and the fact that evidence establishing the appellant's social security number was not introduced until the sentencing stage of the trial (when the prosecution and defense both introduced documents bearing the appellant's name and social security number). I have also examined other cases discussing the nature of "the record" that we may properly examine. *Cf. United States v. Stafford,* 5 M.J. 748 (A.F.C.M.R.1978); *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223, 1973 WL 14486 (1973); *United States v. Swanson,* 9 U.S.C.M.A. 711, 26 C.M.R. 491, 1958 WL 3409 (1958); *United States v. Lanford,* 6 U.S.C.M.A. 371, 20 C.M.R. 87, 1955 WL 3541 (1955); *United States v. Duffy,* 3 U.S.C.M.A. 20, 11 C.M.R. 20, 1953 WL 1965 (1953); *United States v. Whitman,* 3 U.S.C.M.A. 179, 11 C.M.R. 179, 1953 WL 2000 (1953). None of the cases involve a factual situation exactly like the one presented by the appellant's case (e.g., *Boland* involved evidence presented during a competency hearing, which was apparently never brought to the attention of the court-members due to the objection of the defense counsel; the appellant's case involved evidence cheerfully presented to the members

by both trial and defense counsel soon after findings were announced). I acknowledge that Judge Mollison may be completely correct concerning *Boland*'s effect on the case at bar, and I am not firmly convinced that we may properly consider the evidence introduced during sentencing when determining whether "the record" supports the findings approved below. Although I do not approve of the "sand-bagging of the Court" that has occurred in this case (i.e., at trial the defense counsel told the court that the appellant tested positive, and on review the appellate defense counsel takes a contrary position), I am not willing to say that the principle of review stated in *Boland* is inapposite. Thus, I have compartmentalized my thinking when evaluating the evidence of guilt and not considered the evidence introduced during sentencing that affirmatively links the appellant to the social security number appearing on the documents evincing positive laboratory test results.

9. In conclusion, although I agree with the majority that this case was not the trial counsel's finest hour, I am convinced by the evidence presented on the merits that the record meets the minimum standards required for an affirmance.