UNITED STATES, Appellee

v

GLENN H. SWANSON, Second Lieutenant,
U. S. Air Force, Appellant

9 USCMA 711, 26 CMR 491

712

No. 11,381

Decided October 3, 1958

Captain *Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief was *Colonel Ellis L. Gottlieb.*

Major *Carl Goldschlager* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

Robert E. Quinn, Chief Judge:

The accused was brought to trial before a general court-martial on twenty-one charges of issuing checks with intent to deceive and thereafter dishonorably failing to maintain sufficient funds for payment, and on three charges of dishonorable failure to pay debts. At the trial he was acquitted of several of the former charges, others were set aside by the convening authority, and the remaining charges were disapproved by the board of review. However, the board of review affirmed the findings of guilty of the three bad debt charges and the sentence, which is dismissal and forfeiture of all pay and allowances. The accused appealed to this Court on a number of assignments of error.

Our first problem concerns the correctness of the ruling by the law officer denying a defense motion to dismiss the bad debt specification on the alternate ground of lack of jurisdiction or res judicata. The critical fact relied upon by the defense in support of the motion is that the accused was discharged as a bankrupt on September 13, 1957, a week before the trial.

An officer of the armed forces, like other natural persons, can file a voluntary petition in bankruptcy. 11 USC § 22; Audubon v Shufeldt, 181 US 575, 45 L ed 1009, 21 S Ct 735. There is some early authority in military law which seems to indicate that despite a discharge in bankruptcy an officer has a moral obligation to pay which may provide the basis for a prosecution for dishonorable failure to pay debts to the discredit of the service. Dig Op, JAG, 1912–1930, § 414, page 199; United States v Upton, 7 BR 241, 262. The board of review below appears to have relied partly upon this principle in affirming the law officer's ruling. Whether, under these circumstances, a moral obligation to pay can support a criminal prosecution under the Uniform Code when there is, in fact, no legal obligation to pay is indeed questionable. United States v Lenton, 8 USCMA 690, 25 CMR 194; cf. Zabella v Pakel, 242 F2d 452 (CA 7th Cir) (1957) (noting that the moral obligation to pay is sufficient to support a new promise to pay after the discharge in bankruptcy). However, we need not reach the point. It was referred to by trial counsel in the argument on the motion, but specifically disclaimed by him as the basis for prosecution. "[W]e are not resting," he said, "on the dishonorably failing to pay a moral obligation existing after discharge but on dishonorably failing to pay certain debts prior to the Petition in Bankruptcy." As a result, trial counsel continued, there were issues to be determined by the court-martial. In our opinion, the law officer's ruling can be sustained on the ground relied upon by trial counsel.

With certain exceptions, a discharge in bankruptcy releases the bankrupt from legal liability for a civil debt. 11 USC § 35. It has no effect upon penalties which do not originate in a civil money obligation. Thus in Spalding v The State of New York, 4 How 21 (US 1846), the United States Supreme Court held that a fine imposed for a criminal contempt in violation of a court injunction is not a debt dischargeable in bankruptcy. It follows that a prosecution for an offense against the penal code committed before the signing of a petition in bankruptcy is not barred by discharge in bankruptcy, although part of the punishment for the offense includes the payment or forfeiture of money by the accused-bankrupt. To put it another way, a bankruptcy discharge wipes out the bankrupt's civil liability for scheduled debts, but does not absolve him from liability for a crime already committed.

True, the basis for the offense charged here is a personal relationship between the creditor and the debtor. If the relationship is "satisfactory" at a particular time, there is no dishonor in the debtor's failure to pay at that time. United States v Cummins, 9 USCMA 669, 26 CMR 449. Under the

circumstances, a discharge in bankruptcy, before a dishonorable failure to pay has occurred, can do away with the basis for a later charge of a violation of the Uniform Code. This possibility was recognized by the law officer in the hearing on the motion. He asked counsel if in their research they had "come across any explanation as to when the offense of dishonorable failure to pay a debt occurred." Both he and trial counsel indicated the answer depended upon the facts in each case. That indeed is the correct view.

Looking to the facts of this case, it is clear that the offenses were committed before the discharge in bankruptcy. The charge sheet is dated June 6, 1957. Each specification specifically alleged that the dishonorable failure to pay occurred, respectively, "from 15 January 1957 to present," "from 25 February 1957 to present," and "from 15 December 1956 to present." The petition in bankruptcy was not filed until July 17, and the discharge was not granted until September 1957. The crime, therefore, had already been committed. Commission of the offenses did not terminate the accused's civil liability for the underlying debt. The bankruptcy discharge could then operate to permit the accused to avoid legal responsibility for nonpayment, but it did not, and under the statutes could not, give him immunity from prosecution and punishment for the pre-existing violation of the penal law. Consequently, the bankruptcy decree did not adjudicate any fact in issue in this case which could operate as a bar to trial. By the same token, it did not affect the court-martial's jurisdiction over the offense and over the person of the accused as one subject to military law. The law officer's ruling denying the motion was correct.

A mere negligent failure to pay a debt does not constitute conduct to the discredit of the service, in violation of Article 134, Uniform Code of Military Justice, 10 USC 934. It must appear that the nonpayment is the result of "deceit, evasion, or false promises, or the like." United States v Kirksey, 6 USCMA 556, 20 CMR 272. The accused contends the evidence does not show any such culpable conduct on his part, and is, therefore, insufficient to support the findings of guilty. The core of the accused's contention is that he was just not able to pay, a condition which he attributed largely to his wife's personal extravagances. He testified that as early as January 1957, he told his wife they "would have to cut down our expenses." This contention presents a contradiction in approach.

At the trial, the accused took the stand to testify only in regard to the check specifications. The law officer cautioned the court members that they, trial counsel, and he could not cross-examine the accused on the debt charges because of the announced limitation on his testimony. During trial counsel's cross-examination of the accused, the law officer on his own initiative ruled out a question because it seemed to touch upon the debt charges. See Manual for Courts-Martial, United States, 1951, paragraph 149b(1); United States v Kelly, 7 USCMA 218, 22 CMR 8. Now, however, the accused relies upon the testimony to invalidate the very charges on which he refused to testify. Having successfully foreclosed cross-examination on these charges at the trial level, it would seem that he should not, on appeal, be permitted to enlarge the effect of his testimony. See United States v Dicario, 8 USCMA 353, 24 CMR 163. Be that as it may, we have examined the evidence with care and we conclude it is sufficient to support the findings of guilty.

To begin with, the court-martial was not bound to believe the accused's explanation of his financial difficulties and his lack of judgment as constituting the reasons for inability to pay. The evidence shows that over a period of several months the accused was several times requested to pay each of the debts. The accused testified his net monthly income was $517. According to his testimony, he gave $200 a month to his wife to cover the general household expenses. In addition, he had an allot-

ment of $26 a month to an insurance company, and from one of the checks in evidence he paid $79.17 for rent. He thus had remaining over $200 a month for other expenses. Concededly, part of the remainder would be required for personal expenses, but the court-martial could find he was financially able to make payment on his past due debts and that his failure to do so was the result of willful "evasion" of his legal obligations. United States v Kirksey, supra, page 559.

Two other errors are assigned in connection with the testimony. First, the accused contends that trial counsel committed prejudicial error by recross-examining him on the debt offenses when he had expressly limited the scope of his direct examination to the check charges. Second, the accused maintains that the board of review erred to his prejudice by basing its decision upholding the findings of guilty upon evidence not before the court-martial.

The disputed recross-examination is set out in the margin.[1] The accused contends he was denied due ▬▬▬▬ process by being asked questions about a subject as to which he did not testify. The mere asking of the question which was excluded by the law officer did not bring to the attention of the court-martial any matter which is prejudicial. Nor, in the context of the examination, can it be said that it "constituted a deliberate flouting of the rules of evidence" in order to deprive the accused of a

fair trial. United States v Johnson, 3 USCMA 447, 451, 13 CMR 3.

Government counsel argue that the second question, regarding the accused's "obligations," referred not to the "debts" charged but to the accused's financial responsibilities regarding certain of the dishonored checks which he had made arrangements to pay. The argument is supported by the evidence and the development of the cross-examination. It is also supported by defense counsel's own reference, in his final argument, to this arrangement as "a debt." Further support is provided by the fact that, immediately before, the law officer had ruled out the question relating to "debts." Had he thought the second question was pertinent to the debts, it seems likely he would have excluded it as well. In its worst light, the reference is equivocal. If defense counsel thought it was improper, objection should have been made. However, even assuming the point was saved for appellate consideration, nothing was brought out in the answers which had not already been testified to by the accused. In our opinion, therefore, the accused was not prejudiced by the cross-examination. United States v Kelly, supra.

In the course of its discussion of the sufficiency of the evidence, the board of review referred to the ac-▬▬▬▬ cused's testimony admitting that he had cashed certain checks for later use in gambling and that "his petition in bankruptcy,

---

[1] "Q. You have been thinking this problem over for six months, Lt. Swanson?

"A. Roughly, yes.

"Q. Could you tell me the reason why you paid off the checks rather than any amounts on the debts in this case?

"LO: I don't believe we had better examine him on the debts. That question is improper.

"TC: Withdraw the question.

"Q. You testified you paid off your wife's debts, is that correct? In redirect examination you testified you paid off your wife's debts?

"A. Yes.

"Q. Can you tell me a reason why you didn't prefer paying off your obli-

gations rather than pay off your wife's debts?

"A. In reality there was probably no real reason for doing this other than peace in the family. My wife is continually hounding me for money, saying if I wouldn't give her the money she knows people that will.

"Q. You didn't seek to stop this? You let this go right on and paid off her creditors first?

"A. I couldn't very well go to everyone she knew and say stop giving her money. The people I knew that had given her money I instructed to please not give her any more; I would attempt to reimburse them."

submitted in evidence by the defense, listed gambling losses, estimated to be in the amount of $1400." The petition in bankruptcy was not in fact admitted in evidence in connection with the merits of the case; it was merely used in support of the motion to dismiss the debt specifications because of the adjudication in bankruptcy. Manifestly, the board of review erred in relying upon matter not admitted on the merits. United States v Duffy, 3 USCMA 20, 11 CMR 20; cf. United States v Lanford, 6 USCMA 371, 20 CMR 87.

It also seems that the emphasis given by the board of review to the accused's "gambling" checks is similarly misplaced. The testimony related to a time when the accused was on temporary duty at Ellsworth Air Force Base, South Dakota, for the first two weeks in December 1956 and the amount of the checks was at most $150.[2] The defaults in the debts, as previously indicated, were alleged to have taken place, respectively, "from 15 January 1957 to present," "from 25 February 1957 to present," and "from 15 December 1956 to present." With respect to two of the debts, the gambling incident antedates the alleged default in payment by four weeks in one case, and almost nine weeks in the other. As to the third, the Secretary of the Briggs Air Force Base Officer's Club, to which the accused was indebted, testified that while the accused's account at the Club was delinquent, he was not regarded as being in default during his absence on temporary duty. It was not until February 7 that the accused's squadron commander was informed of the account; and it was not until March that the accused was personally requested to pay. Considering the time element and the relatively small amount, it is questionable whether the "gambling checks" have real probative value in determining the nature of the accused's failure to pay the "debts."

Improper matter relied upon by the board of review in reaching its decision

ordinarily justifies remand of the case to it for reconsideration. United States v Troutt, 8 USCMA 436, 24 CMR 246. However, the accused presented the same issue to us. We have determined it adversely to him, without reliance upon the disputed matters. In this situation remand of the case is unnecessary.

Finally, the accused contends that in the interest of justice he should have a redetermination of his sentence by a court-martial. It will be recalled that he was originally tried on twenty-one check specifications and three debt charges. He was convicted of the latter and fourteen of the check specifications. The court was instructed that the maximum punishment which could be adjudged was dismissal, forefeiture of all pay and allowances, and confinement at hard labor for eight and one-half years. It imposed a sentence of dismissal and total forfeitures. The convening authority set aside the findings of guilty of two of the check specifications and affirmed the sentence. The board of review set aside and dismissed the remaining eleven charges, but affirmed the sentence as appropriate for the three debt offenses, which carry a maximum sentence of dismissal, total forfeitures, and confinement at hard labor for one and one-half years. The accused maintains he should have a "primary rather than a 'secondary and derivative' redetermination" on his sentence. United States v Voorhees, 4 USCMA 509, 531, 16 CMR 83.

The issue is not one which is susceptible of easy solution. In any given case there may be room for a difference of opinion. For example, this Court recently divided on whether the findings of guilty which were set aside on appeal were "quantitatively and qualitatively" so much a part of the offenses considered by the court-martial as to require a rehearing on the sentence. United States v Stene, 7 USCMA 277, 282, 22 CMR 67. In our opinion, the number and the nature of the check offenses are such as to compel the conclusion they affected the sentence deliberation of the court-martial. There were fourteen

---

[2] The accused maintained that part of the money was used otherwise.

such offenses and only three debt charges. The court-martial had found that in the issuance of each check the accused had entertained an actual intent to deceive. But, as to the debt charges, the verdict might have been determined, as argued by trial counsel and authorized by the instructions given to them by the law officer, only on the basis that the accused was guilty of "evasion" of payment of his debts. In view of this great disparity, we conclude that a rehearing on the sentence should have been ordered by the board of review. See United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Kowert, 7 USCMA 678, 23 CMR 142.

The decision of the board of review as to the sentence is set aside. A rehearing on the sentence may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

While agreeing generally with the majority opinion in its treatment of the substantive issues before us, I differ as to the proper disposition of the case.

In United States v Voorhees, 4 USCMA 509, 16 CMR 83, a case of first impression in this area, we enunciated a general principle which was subsequently crystallized in United States v Stene, 7 USCMA 277, 22 CMR 67, as follows:

". . . When an accused is found guilty of a number of offenses and the board of review affirms only one which is a technical violation of a minor nature and an infinitesimal part of the combined findings supporting the original sentence, a rehearing by a court-martial is an appropriate means of correcting an injustice when the board of review is without the power to take other corrective action."

In my opinion, the instant case falls outside the ambit of that rule. Here, the accused was convicted of fourteen bad check specifications and three specifications of dishonorable failure to pay his debts. Intermediate reviewing authorities set aside the convictions on the check offenses but affirmed those which concerned the dishonorable failure to pay debt crimes. For reasons which will hereinafter appear, I fail to see how those prior dispositions render the remaining offenses technical violations of a minor nature and an infinitesimal part of the combined findings supporting the original sentence.

As in the *Stene* case, supra, the offenses affirmed by the board of review were serious breaches of military law. In addition, the bad check specifications concerned rather small sums of money, and they totaled up about one-seventh of the amount involved in the dishonorable failure to pay offenses. But the important point is that all the transactions arose out of a refusal by the accused to conform to the financial requirements expected of an officer in the service, and the particular offenses affirmed were the most serious aspects of his misbehavior. In United States v Kirksey, 6 USCMA 556, 20 CMR 272, we specifically considered the grievous effect upon the military community of such dishonorable conduct, and we did not hesitate to brand it as service-discrediting. Therefore, I am inclined to believe these affirmed offenses constituted a substantial part of the unlawful conduct considered by the court-martial when it determined the appropriateness of sentence, and they were the sole basis for the finding by the board of review that the sentence should be affirmed.

In the early case of United States v Keith, 1 USCMA 442, 4 CMR 34, we had this to say about the appropriateness of a sentence:

". . . if an accused is properly found guilty under any one of several counts, the sentence will not be disturbed on appeal if it is legally justified and appropriate for that count. This concept was, we think, properly applied to a court-martial conviction in Carter v McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181. In that case, the accused had been convicted by general court-martial under four charges with specifications under each. The President, as reviewing

718

authority, had disapproved certain of the specifications. One of the contentions made on appeal was that the sentence had ceased to be the sentence of the court-martial because of the disapproval of certain specifications by the President. The Court referred to the Claassen case, supra, for a statement of the applicable general principles, and held that the action of the President would not be disturbed. This holding appears to have been based on the ground that the President as a reviewing authority—in the language of the Court, 'a court of last resort'—had determined that the sentence was appropriate for the valid findings of guilty. *We quite agree that if a military judicial agency empowered to do so has determined that the original sentence is appropriate for a single valid conviction in a case involving several specifications, we are powerless to disturb that determination on review."* [Emphasis supplied.]

Clear beyond dispute is the fact that Congress has given boards of review the authority to determine the appropriateness of sentence, and that was precisely what was done here. In concluding its opinion, the board of review stated:

"In view of the disaffirmance of the findings of guilty of the worthless check specifications a rehearing may be ordered but the Board believes that this is not necessary under the circumstances in this case. Affirmance of the remaining findings of guilty, and the sentence, which the Board has considered in the light of the findings disaffirmed and the error above mentioned, and deems appropriate nevertheless, is considered by the Board to be in accordance with the dictates of justice."

Finally, it is to be noted that the board of review considered a rehearing on the check charges to be a permissible alternative, but it did not make that disposition because it affirmed the sentence. Therefore, if the sentence is not approved and the record is returned for a rehearing, the accused should stand trial on those specifications set aside by the board of review.

For the reasons previously enumerated, I would affirm the decision of the board of review.