UNITED STATES, Appellee,

v.

Major Daniel S. CZEKALA, Jr., 042–48–9582, United States Army, Appellant.

ACMR 9102675.

U.S. Army Court of Military Review.

25 Aug. 1993.

Reconsideration Denied 28 Sept. 1993.

For Appellant: Captain Lawrence W. Andrea, JAGC (argued), Colonel Malcolm H. Squires, Jr., JAGC (on brief); Major Robin L. Hall, JAGC.

For Appellee: Captain John G. Giovannelli, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before DeGIULIO, Senior Judge, and GRAVELLE, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial composed of officer members. Contrary to his pleas, he was found guilty of conspiracy to violate a regulation, violation of a lawful general regulation, three specifications of perjury, presenting a false claim, three specifications of conduct unbecoming an officer, and obstruction of justice, in violation of Articles 81, 92, 131, 132, 133, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881, 892, 931, 932, 933, and 934 (1988). He was sentenced to dismissal, confinement for one year, and forfeiture of all pay and allowances. The convening authority approved the sentence.[1]

Twelve of thirteen asserted errors will be discussed in this opinion. Appellant asserts that the staff judge advocate's post-trial recommendation was incomplete and failed to respond to appellant's allegations of legal error, that the military judge erred by ruling that appellant waived his right to an investigation conducted pursuant to Article 32, UCMJ, that the record is nonverbatim because availability of witnesses was litigated in a Rule for Courts–Martial 802 [hereinafter R.C.M.] conference and was not adequately summarized on the record, that the military judged erred by denying a request to have Pastor Rudquist testify on the merits, and that the military judge erred by not granting a challenge of a member for cause. He also asserts legal and factual sufficiency of the evidence to the three conduct unbecoming specifications and that two of those specifications fail to state an offense. Appellant asserts that he cannot be found guilty of failure to pay a just debt that has been discharged in bankruptcy; but, if he could, the military judge failed to instruct the panel on mistake of fact. He also asserts that the court should have been instructed on mistake of fact in relation to the perjury offenses. Finally, he asserts that the military judge's erroneous instructions materially prejudiced him. This court finds the evidence insufficient to support the finding of guilty to the specification alleging failure to pay a just debt, sets aside the finding of guilty to that specification, affirms the remaining

---

1. Effective 17 July 1992, the convening authority at Fort Leavenworth, Kansas, suspended the unserved portion of the sentence to confinement for twelve months on the condition that appellant not violate any court order pertaining to the custody of his children, report to the command judge advocate the current court ruling pertaining to the custody of his children, and not violate any punitive article of the UCMJ.

findings of guilty, and reassesses the sentence.

Appellant, a married officer, met Denise in Germany in March of 1984. Denise was a U.S. civilian employee and married to another servicemember. Appellant met with her on several occasions in Germany, at least one of which was after his wife had returned to the United States just prior to his reassignment to West Point.

While appellant was assigned to West Point, New York, evidence of record indicates that Denise lived in Fishkill, New York. She worked approximately thirty miles from West Point. During 1985, appellant took Denise to his father's residence in East Lyme, Connecticut, where she met his ailing father. Subsequently, Denise, a nurse, cared for his ailing father. When his father died, Denise attended the funeral. Appellant's wife did not. It should be noted that Lynne lived with appellant at West Point.

In 1986, when appellant was reassigned to Walter Reed Army Medical Center, appellant and Denise agreed to rent and share a dwelling in the Washington, D.C., area. Apparently, prior to the move to Washington, D.C., Denise divorced her husband. Denise had two children. Appellant and his wife, Lynne, had two sons.

Appellant testified that he had been separated from his wife since 1986 and had not had sex with her. This was the period of time that he lived in Washington D.C. He testified that he lived in the shared townhouse with Denise and her children. His children and a neighbor testified that appellant lived there. Appellant and Denise testified that they did not have sex together while they shared the townhouse. His children, who lived with Lynne, testified that appellant and Denise did not sleep together. Appellant, however, did not claim this "shared townhouse" as his address on military records.

On the other hand, appellant's wife, Lynne, testified that they were not separated and that she did not know appellant was living with Denise. She testified that appellant was on temporary duty (TDY) away from the area much of the time. She testified that appellant lived with her at their address in Maryland and that they had sex together. Information provided by appellant on official records reflects appellant's address as that of Lynne. One neighbor testified that appellant lived at that address. Appellant paid the rent and wrote letters to the property manager as if he lived at that address. Evidence of record, to include testimony of appellant, shows that appellant was absent on TDY fifty percent or more of the time.

In February 1990, Denise moved to Minnesota to care for her ailing mother. Appellant submitted his resignation after seventeen years of active duty, telling his superiors that his family had moved to Minnesota and that he must move there in order to attempt a reconciliation. Appellant also filed for divorce from Lynne.

According to Lynne's testimony, appellant told her that he had cancer, that the Army would not pay for such catastrophic medical expenses, and that a divorce was the only way she could be protected financially. She testified that he assured her that nothing would change, they would still essentially be man and wife, he would continue support, and she could wear her wedding rings. He told her he had to go to Minnesota to receive treatment at the Mayo Clinic. As a consequence, she did not contest the divorce. It should be noted that appellant is a Medical Service Corps officer with duties in patient administration.

Appellant's superiors, believing appellant should not throw away seventeen years of service, were able to get appellant assigned to Fort Snelling, Minnesota. Appellant withdrew his resignation. In April, shortly after receiving his orders, he filed for divorce from Lynne. The ground for the divorce was living separate and apart for two years without cohabitation.

In May 1990, appellant traveled alone by commercial aircraft to his new duty station in Minnesota. Later, he filed for travel pay, falsely claiming that he traveled by privately owned vehicle on 13–15 April 1990 with his wife Lynne and two children. In

Minnesota, he lived with Denise and her two children.

In June, appellant returned to Maryland for the divorce proceeding. During the proceeding, appellant stated under oath that he and Lynne lived separate and apart without cohabitation for more than two years. Lynne testified at the courts-martial that, in fact, she and appellant had sex when he returned for the divorce proceeding. Lynne testified at appellant's court-martial that she did not contest the divorce because it was supposed to be a "sham" divorce.

In July 1990, the divorce became final. Custody of the children was to be joint with primary residence with the mother, Lynne.

After the divorce, the children visited appellant. Lynne testified that the purpose was for him to have their support during his cancer treatments. Eventually, one son, C, returned to Maryland. On 14 October 1990, much to her surprise, Lynne received a certified letter from Denise, telling Lynne that appellant had followed Denise to Minnesota, that appellant and Denise had married, that Lynne should not fight for custody of the children, and that she would receive no more money. The letter also stated that, when she moved to Minnesota, Denise had told appellant that their relationship had ended.

The next day appellant sent Denise to Maryland by plane. Without Lynne's knowledge or consent, she took C back to Minnesota. Lynne was informed by a note left by C. Appellant paid for the airplane tickets by use of his Diners Club Card, a card obtained at the behest of the government to be used by appellant for his TDY expenses and for which the government provided reimbursement.

In November 1990, appellant filed for bankruptcy listing as expenses $700.00 child support. The last support he provided to Lynne was $350.00 in July 1990. He listed as a debt to be discharged in bankruptcy the Diners Club Card debt, to include the airplane tickets when Denise took C from Maryland to Minnesota.

In January 1991, appellant received notice that he was to be questioned by agents of the Criminal Investigation Command (CID) concerning his travel claim. The night before he was to be interviewed, he called Lynne. He left messages on her answering machine soliciting her cooperation concerning an investigation and threatening her employment if she did not answer the telephone. Lynne identified appellant's voice on the tape which stated, "Pick up the damn—I told you I needed to talk to you. It's a serious nature. I need you to talk to me. O.K. Call me, or I'll call you later whatever. Bye." And later, "Lynne, I know you're there. Please pick up the phone. Please, pick up the phone. You can always put it down after you hear me." And later, "Lynne, this is Dan again. I need to talk to you before morning. I have a meeting tomorrow morning that I have to have some information by. Make sure you call me. Don't ding around with this thing. This is not funny at all. This is serious." And again, "Lynne, this is Dan again. If you're home, please, pick up the phone." Later,

I'm still waiting for your call. Don't play games with this one, or you're going to be extremely sorry. It's not a joke. And, when you hear about it, you'll understand. Call me as soon as you get in the house. Don't make me keep calling. Call collect, O.K., if it's that much for you. Bye.

And again, "Lynne, please, pick up the phone. We need to talk. Please, pick up the phone. Please, listen to me. Pick up the phone, please." And again,

Listen, pick up the phone. Stop playing f_____ games. When you hear what I have to say to you, you won't—wish you had picked up the goddamn phone. Now, pick it up. It has to do with you just as well as it does me, and you need to understand something.

And more telling,

Lynne, your job is in jeopardy, O.K., if I go to this meeting tomorrow and you have not talked to me. O.K. An investigation [is] going on, and you need to know something so you can get yourself

squared away. And without talking to you, there's no way that this shit will jive, no way. You call me anytime you want. I am not calling back anymore. If you don't think it's serious enough, then fine: you take the consequences. I'm tired of trying to save everything around this goddamn place. You ain't got five minutes to talk to me, then fine. Then I'm going to stop caring, too. Bye. And finally, "Lynne, this is Dan. If you're home, pick up the phone."

Lynne gave the tape to the criminal investigators. In his interview with criminal investigators the next day, appellant admitted that his wife and children had not traveled with him by privately owned vehicle to Minnesota from 13–15 April and that he traveled to his new duty station in Minnesota by plane.

### I. The Post–Trial Recommendation

■ Appellant asserts that the staff judge advocate failed to include in his post-trial recommendation that appellant had earned the Joint Service Commendation Medal. We agree that R.C.M. 1106(d)(3)(B) requires that the recommendation include an accused's awards and decorations. Although it was error not to include the Joint Service Commendation Medal in the recommendation, the error was waived by appellant's failure to raise it in his subsequent submission. *See United States v. Martinsmith*, 37 M.J. 665 (A.C.M.R.1993). Further, there was no prejudice to appellant because the record of trial, which was an enclosure to the recommendation, contained that information. *Id.*

■ Appellant also asserts that a new recommendation and action is required because the staff judge advocate's recommendation fails to respond to allegations of legal error raised by appellant in his submission. *See* R.C.M. 1106(d)(4). In his post-trial submission, appellant maintained that "[t]he Army's prosecution of [appellant] invaded the province of a state court in Maryland that heard the divorce action and the United States Bankruptcy Court in St. Paul, Minnesota...." Appellant asserts that the staff judge advocate erroneously treated these issues as clemency mat-

ters when they were in fact legal issues. He contends that the staff judge advocate was required to address them but did not. He therefore maintains that he is entitled to a new recommendation and action.

In addressing this issue, both appellant and government counsel rely on *United States v. Hill*, 27 M.J. 293 (C.M.A.1988). In *Hill* it was held that generally where the staff judge advocate fails to address legal issues raised by appellant in his response to the recommendation, a new recommendation and action is required. It was also held, however, that "[i]f the Court of Military Review is convinced that, under the particular circumstances, a properly prepared recommendation would have no effect on the convening authority's exercise of his discretion—the burden in this regard being on the Government—remand to the convening authority is unnecessary." *Id.* at 296.

In the case before us, we understand the staff judge advocate's confusion as to whether appellant's post-trial submission raised a legal issue. Nevertheless, a prudent staff judge advocate would be well advised to treat the comments as raising legal issues. We will treat them as legal issues for the purposes of this opinion. An examination of the allegation against the appellant in this case and the record of trial cause us to conclude that the government neither attacked the divorce or the bankruptcy proceedings nor attempted to set aside the determinations of those proceedings. It merely alleged as crimes appellant's actions in matters related to those proceedings which were crimes under the UCMJ. We conclude that appellant's assertions of legal error in his post-trial submission are without merit. In this particular case, we conclude that a properly prepared recommendation would have no effect on the convening authority's exercise of discretion. We hold that remand to the convening authority is unnecessary. *See Hill*, 27 M.J. at 296.

### II. Failure to Grant Relief from Waiver of the Article 32, UCMJ, Investigation

■ At the investigation conducted pursuant to Article 32, UCMJ, appellant made

several objections. The objections were that he did not have enough time to prepare, that the investigating officer was biased, and that he did not receive some evidence prior to the hearing. After the investigating officer decided the objections against him, appellant waived the investigation. He did not challenge the investigating officer or raise any objection with the convening authority. He moved to reopen the Article 32 investigation at a pretrial session conducted pursuant to Article 39(a), UCMJ [hereinafter 39(a) session], based upon the objections noted. After examining evidence on the motion, the military judge denied the motion because appellant had not objected to the report within five days [2] and had not shown good cause for his not having sought relief from the convening authority.

The pertinent rule concerning waiver provides, "The accused may waive an investigation under this rule.... Relief from the waiver may be granted by the investigating officer, the commander who directed the investigation, the convening authority, or the military judge, as appropriate, for good cause shown." R.C.M. 405(k).

In the case before us, the military judge found that appellant had failed to show good cause for relief from his waiver of the investigation. The test is whether the military judge abused his discretion and whether his decision was clearly erroneous. *United States v. Nickerson*, 27 M.J. 30, 31 (C.M.A.1988). We find no abuse of discretion. His decision was not clearly erroneous. We hold that appellant waived the Article 32 investigation and failed to show good cause for relief from the waiver. His assertion of error is without merit.

III. Completeness of the Record of Trial

Appellant asserts that the parties litigated the availability of witnesses in a session conducted pursuant to R.C.M. 802, which is not adequately summarized on the record. The military judge denied appellant's mo-

tion to produce some of those witnesses. In a subsequent session conducted pursuant to Article 39(a), UCMJ, the denial of the witnesses was litigated on the record.

After referral, a military judge may conduct conferences with the parties to consider matters as will promote a fair and expeditious trial. R.C.M. 802. Conferences should generally be used for routine and administrative matters and should not be used to litigate and resolve contested issues. R.C.M. 802(a) discussion. With consent of the parties it can be used to resolve a request for witnesses "which, if litigated and approved at trial, would delay the proceedings and cause expense or inconvenience...." *Id.* Matters agreed upon at conferences should be included in the record and failure to object waives this requirement. R.C.M. 802(b).

In the case before us, the denial of a requested witness is not a matter to be resolved at a R.C.M. 802 conference. It was error for the military judge to attempt to do so. We have cautioned military judges on the use of the conference. *See United States v. Lopez*, 37 M.J. 702 (A.C.M.R. 16 June 1993) (reasons for request for continuance stated in chambers); *United States v. Hamilton*, 36 M.J. 723 (A.C.M.R.1992) (procedures on announcement of mixed pleas discussed in conference and not on record); *United States v. Washington*, 35 M.J. 774 (A.C.M.R.1992) (improper procedure to seal sentence in co-accused case and not announce it until after accused sentenced discussed in conference); *United States v. Loving*, 34 M.J. 956 (A.C.M.R.1992) (alleged that discussions which indicated the military judge's bias took place in an unrecorded conference). We once again caution military judges not to use conferences for issues which may become the subject of appellate review. If there is any doubt concerning the use of a conference, a session should be

---

2. R.C.M. 405(j)(4) provides, "Objections. Any objection to the report shall be made to the commander who directed the investigation within 5 days of its receipt by the accused. This subsection does not prohibit a convening authority from referring the charges or taking other action with the 5–day period."

conducted on the record.[3]

In this case, even though the conference should not have been used to deny the request for witnesses, defense counsel ensured that he relitigated the issue on the record in an Article 39(a) session. We find the transcript sufficient for us to conduct appellate review of the issue. *See Washington,* 35 M.J. at 776.

### IV. Denial of a Request for Pastor Rudquist to Testify

Pastor Rudquist was one of the witnesses discussed in the R.C.M. 802 conference. At an Article 39(a) session, defense counsel again raised the issue. He stated that the Pastor would testify to a meeting with the boys and Lynne where "the boys confront[ed] her about her claim that their father lived with them happily throughout the time of the relevant separation period claimed in the divorce." Based upon this meeting and four or five telephone calls, it was proposed that the pastor would testify to Lynne's credibility. The military judge found one meeting not relevant and inadequate for impeachment. The military judge also held that the boys could testify concerning the matter. He did not let the Pastor testify to this matter.

Appellant is correct in his contention that credibility of a witness is a matter for the finder of fact. *See United States v. Welsh,* 774 F.2d 670, 672 (4th Cir.1985). He is also correct in stating that rules of procedure and evidence should be liberally construed so an accused can be heard fully in his defense. *United States v. Coffin,* 25 M.J. 32, 34 (C.M.A.1987). The military judge is given broad discretion in determining if evidence should admitted or limited. Here, he determined that the Pastor's one meeting with Lynne and four or five telephone calls were an insufficient basis for impeachment. In addition, he believed that the evidence was cumulative because the boys could testify to the subject matter. *See* R.C.M. 703(b)(1) discussion (relevant testimony necessary if not cumulative). Although he did not mention

Military Rule of Evidence 403, that the probative value outweighed the attendant probative dangers, it is apparent from the record that he applied the balancing test. We find no clear abuse of discretion.

### V. Denial of the Challenge for Cause of Colonel E

During voir dire, Colonel E indicated a belief that an officer convicted of conduct unbecoming an officer should be dismissed from the service. She explained that as a reserve officer she felt an officer convicted of that offense should not be permitted to remain on active duty, that her beliefs were less rigid than they had been as a young officer, and that she recognized the need for exceptions to the rule. She stated she believed that there were circumstances to warrant retention on active duty after a finding of guilty to conduct unbecoming an officer and gentleman. She stated that she would follow the guidance given by the military judge and make a decision after hearing all the circumstances.

"A challenge for cause must be granted when a court member has 'an inelastic attitude toward the imposition of a punitive discharge ... based solely on the nature of the crime.'" *United States v. Bannwarth,* 36 M.J. 265, 267 (C.M.A.1993) *citing United States v. Cosgrove,* 1 M.J. 199, 200 (C.M.A.1975). A court member is not automatically disqualified if he admits an unfavorable inclination toward an offense; the test is whether the member's personal bias will not yield to evidence presented and the judge's instructions. *United States v. Reynolds,* 23 M.J. 292, 294 (C.M.A.1987).

In the case before us, considering all the responses of Colonel E, we are satisfied that her attitude was not inelastic and that she would yield to the evidence presented and the instructions of the military judge. We hold that the military judge did not abuse his discretion in denying the chal-

---

**3.** It seems to us that an additional reason for limiting the use of conferences exists. It may appear to an accused or others that the lawyers, including the military judge, met in the back room and decided the case. Even the appearance of "backroom justice" should be avoided.

lenge for cause. *See Bannwarth*, 36 M.J. at 267; *United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954).

## VI. Failure to Prove Conduct Unbecoming an Officer

■ Three specifications allege conduct unbecoming an officer and a gentleman by wrongfully and dishonorably having an affair with Denise, by wrongfully and dishonorably orchestrating a divorce from his lawful wife Lynne, and by dishonorably failing to pay a debt owed to Citicorp Diners Club. Appellant contends that to constitute these offenses the charged misconduct must compromise the accused's character as a gentleman and his status as an officer. *See United States v. Sheehan*, 15 M.J. 724, 726 (A.C.M.R.1983) (failure to meet a suspense date diminished standing as an officer but did not impugn his honor or integrity or subject him to social disgrace). *See also United States v. Tuck*, 7 C.M.R. 829 (A.F.B.R.1953) (in weighing the evidence in this case, the Board of Review did not find aiding and abetting wrongful appropriation to seriously compromise standing as an officer or his character as a gentleman). Appellant maintains, if properly proved, the offenses cast doubt on appellant's standing as a gentleman, but not to his ability to function as an officer.

> Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty. Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the service and military necessity below which the personal standards of an officer ... cannot fall without seriously compromising the person's standing as an officer ... or a person's character as a gentleman.

Manual for Courts–Martial United States, 1984, Part IV, para. 59c(2). There is no requirement that the conduct be otherwise criminal to constitute a violation of Article 133, UCMJ, 10 U.S.C. § 933. *United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987). Acts punishable under other articles of the UCMJ except minor derelictions are also violations of Article 133. *Id.* For instance, failure to pay a just debt has been held to violate Article 133. *United States v. Brunson*, 30 M.J. 766 (A.C.M.R.1990).

The test for legal sufficiency is whether, viewing the evidence in a light most favorable to the government, a reasonable fact finder could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Applying this test, we find the evidence legally sufficient to prove the offenses alleged, except for the offense of failure to pay a just debt which will be discussed later in this opinion. We note that appellant's conduct is that type of dishonesty and unfair dealing described by the Manual for Courts–Martial as being below the standard expected of an officer.

The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having seen or heard the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Applying this test, we are convinced of appellant's guilt of these offenses beyond a reasonable doubt, except for the specification alleging failure to pay a just debt which will be discussed later in this opinion. In arriving at this conclusion, we decide the issue of credibility against appellant.

### A. Conduct Unbecoming an Officer by Having an Affair

■ Appellant asserts that the specification alleging conduct unbecoming an officer and a gentleman by having an affair with Denise does not state an offense, and, in any event, the government failed to

prove it. The specification alleges that while living with his lawful wife Lynne, appellant wrongfully and dishonorably had an affair with Denise during which time he entered into a lease agreement and paid monthly rent on Denise's behalf, resided with Denise, escorted her to public places of entertainment, and kept clothing at her house.

The specification in this case is based upon the allegation in *United States v. Alcantara*, 39 C.M.R. 682, 685 (A.B.R. 1968), *aff'd on other grounds*, 18 U.S.C.M.A. 372, 40 C.M.R. 84 (1969). In *Alcantara*, it was stated,

> The word 'affair' connotes, among other things, a 'love affair'. It has similarly been judicially defined, and can, and often does, indicate an illicit sexual relationship. Accordingly, we fail to follow counsel's argument, especially since the specification further clarifies the word 'affair' by spelling out specific acts ... which form the backdrop for the charge. On the contrary, we hold that the specification adequately charges appellant with conduct and behavior in an unofficial or private capacity which, in dishonoring or disgracing him personally, seriously compromises his standing as an officer.

*Id.* at 685 (citations omitted). We believe the holding of that court is also applicable in the case before us. We hold that the specification states an offense.

 Again, appellant questions the factual sufficiency of the evidence. We find it difficult to believe that appellant was not having an affair with Denise. We have considered that appellant met Denise in 1984 in Germany, Denise worked within thirty miles of West Point when appellant was assigned there, Denise visited appellant's ailing father and cared for him from time to time, Denise attended appellant's father's funeral, appellant and Denise decided to share quarters when he moved to Maryland, appellant followed Denise to Minnesota, appellant told his superiors he needed to go to Minnesota to save his family, and appellant's eventual marriage of Denise. Most telling were appellant's own words when he stated, "[I] knew that the Army wouldn't look favorably on an individual living with a single woman in a dwelling. They wouldn't understand all the things I'm trying to bring out now as to the reasons. I knew that." (Record 1,940). We find the evidence factually sufficient to prove appellant's guilt of this offense beyond a reasonable doubt. *See* UCMJ art. 66(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). To conclude that appellant did not have an affair with Denise would ignore common sense and our knowledge of human nature and the ways of the world. *See* Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 2–29.1 (1 May 1982) [hereinafter Benchbook].

### B. The Fraudulent Divorce

 Appellant contends that this specification does not state an offense, and the government, in any event, failed to prove all the essential elements beyond a reasonable doubt. Appellant maintains that the government simply manufactured an offense. He complains that the government charged him with a violation of Article 133 by obtaining a divorce.

 Acts need not violate other punitive articles of the code to be conduct unbecoming an officer and a gentleman. *United States v. Taylor*, 23 M.J. 314 (C.M.A. 1987). Appellant's acts in deceitfully obtaining the divorce are those dishonest acts exhibiting unfair dealings which are proscribed by Article 133, UCMJ. We hold that the specification states an offense. We find the evidence is legally and factually sufficient to support the findings of guilty. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); UCMJ art. 66(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

### C. Failure to Pay a Just Debt

 Appellant asserts that he cannot be found guilty of failure to pay a just debt that has been discharged in bankruptcy. He further asserts that, even if he had a duty to pay the Diners Club card bill, the military judge erred by refusing to give an instruction on mistake of fact.

Failure to pay a debt that has been discharged in bankruptcy can be an offense under Article 133, UCMJ. *United States v. Swanson*, 9 U.S.C.M.A. 711, 26 C.M.R. 491 (1958). The test is whether the relationship between the creditor and debtor is satisfactory at the time the debt is discharged in bankruptcy. *Id.* If the relationship is unsatisfactory at that time, the offense will lie, the theory being that a dishonorable failure to pay a just debt has already occurred. *Id.*

In my opinion, in the case before us, evidence of record establishes that appellant was given notice that his account to CitiCorp Diners Club was past due on 15 August 1990 (Prosecution Exhibit 34(f)). Subsequent notice that his account required payment immediately to avoid collection action was given to appellant in September and October 1990 (Prosecution Exhibits 24(g) and (h)). Appellant did not file his petition in bankruptcy until 8 November 1990, well after he received notice of his delinquent account. Aggravating the appellant's failure to pay this debt, is the fact that the Diners Club Card was a "government credit card." This card was issued on behalf of the government in the name of appellant. Appellant was to use it for expenses while on official business for the United States. The government would reimburse appellant. I also note that at least part of the charges on the credit card were for the plane tickets used by Denise to take C from Maryland to Minnesota without his mother's knowledge or consent. Since appellant's relationship to the debtor, CitiCorp Diners Club, was not satisfactory prior to his filing of his petition in bankruptcy, I would find a dishonorable failure to pay a just debt. Under these circumstances, I would hold that the discharge in bankruptcy did not bar prosecution for this offense. My brother judges, however, disagree with me on this issue.

My brothers agree that *Swanson* is controlling. The government charged the beginning date of the offense as 9 December 1990. Bankruptcy was filed on 8 November 1990. Consequently, my brothers contend, applying *Swanson*, the bankruptcy filing was before the date of the alleged offense, and the offense is barred by the filing. They contend that the government could have but did not allege the failure to pay a just debt on or after 15 August 1990. It is my view that once the debtor-creditor relationship is unsatisfactory, the offense lies from that point, regardless of the date alleged in the specification. This court will set aside the finding of guilty of this specification and reassess the sentence. Because of our holding, the necessity for the mistake of fact instruction concerning this offense will not be addressed.

### VII. Failure to Give Mistake of Fact Instruction as to The Perjury Offenses

Appellant asserts error in the failure to give a mistake of fact instruction relating to the offense alleging perjury in the state divorce proceeding where appellant stated that he and Lynne had lived separate and apart for longer than two years. He asserts the same error as to the offense alleging perjury when he stated in the bankruptcy proceeding that he paid monthly child support. We do not find "some evidence" to which the court members could attach credence. *See United States v. Watford*, 32 M.J. 176, 178 (C.M.A.1991) (some evidence to which the court members can attach credence required for a defense to be reasonably raised). We hold that mistake of fact was not reasonably raised as to these offenses.

### VIII. Reasonable Doubt Instruction

Appellant asserts errors in the military judge's instructions to the members before findings. Only that error concerning reasonable doubt merits comment. In this respect the military judge instructed the court,

Now, in considering the evidence in this case, before you vote for a finding of guilty, you must be convinced to a *moral certainty* of the accused's guilt; and you must be satisfied that the evidence is such as to exclude *not* every fair and rational hypothesis or theory of innocence. Now, if you are not so convinced and satisfied, then it is your duty to find

the accused not guilty. (emphasis added).

■ Appellant's major assertion of error relates to the "moral certainty" language in the instruction. He asserts error, citing *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In *Cage* the jury instruction equated reasonable doubt with "grave uncertainty" and "actual substantial doubt." This language was used in conjunction with "moral certainty." This is not the reasonable doubt instruction used in trials by courts-martial. Use of the language "to a moral certainty" in courts-martial has been found not to be error. *See United States v. Gray*, 37 M.J. 730, 749 (A.C.M.R.1992); *see also United States v. Ginter*, 35 M.J. 799, 803 (N.M.C.M.R. 1992). We find no error in this respect.

■ Of greater concern is the military judge's instruction that "[you] must be satisfied that the evidence is such as to exclude *not* every fair and rational hypothesis or theory of innocence." (emphasis added). The instruction should have been, "[T]he proof must be such as to exclude not every hypothesis or possibility of innocence but every fair and rational hypothesis except that of guilt." DA Pam. 27–9, para. 2–29.1.

■ In *Sullivan v. Louisiana*, —— U.S. ——; 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), it was held that an erroneous reasonable doubt instruction was not subject to a harmless error analysis permitted by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In analyzing the issue, the Court found that the reasonable doubt instruction is based on two interrelated constitutional rights found in the Fifth and Sixth Amendments. Insofar as the reasonable doubt instruction is a requirement of the Fifth Amendment, errors are subject to a *Chapman* harmless error analysis. The Court found, however, that the reasonable doubt instruction is also based on the Sixth Amendment right

to a jury trial, violations of which are not subject to a harmless error analysis. Because of the Sixth Amendment implications, the Court concluded that errors involving the right to a jury trial require reversal. We note one important distinction between the civilian criminal proceeding in *Sullivan* and the court-martial proceeding before us. "[C]ourts-martial have never been considered subject to the jury-trial demands of the Constitution." *United States v. McClain*, 22 M.J. 124, 128 (C.M.A.1986). Consequently, we conclude that an error in the reasonable doubt instruction is subject to the harmless error analysis.[4]

In the case before us, that portion of the instruction in question was erroneous. The military judge defined reasonable doubt. He instructed the court:

> Now, a reasonable doubt is what the words imply. It is a doubt founded in reason arising from the evidence or the lack of it after consideration of all the evidence. Now, a reasonable doubt is not a flimsy, fanciful, imaginative, or fictitious doubt, since such doubts can be raised about anything and everything in the human experience. Rarely, if ever, can anything be proved to an absolute mathematical certainty, and such a burden is not required of the Government here. Rather, a reasonable doubt is a doubt which would cause a reasonably prudent person to hesitate to act in the more important and weighty of his own personal affairs.

These instructions properly define reasonable doubt. The questioned portions of the instruction are obviously a "slip of the tongue" by the military judge. Indeed, trial defense counsel must have shared this conclusion because he voiced no objection to the instruction. *See Ginter*, 35 M.J. at 803. We hold that the error was harmless

**4.** The instructional error here is analogous to the error described in *United States v. Alford*, 31 M.J. 814 (A.F.C.M.R.1990), *pet. denied*, 33 M.J. 198 (C.M.A.1991), in that both cases involve an unwanted "not" in an instruction. Although *Alford* does not involve an instruction defining reasonable doubt, the considerations, precedent, methodology, and rational used to resolve *Alford* closely parallel those involved here. That opinion is persuasive in resolving this issue.

beyond a reasonable doubt.[5] *See United States v. Remai*, 19 M.J. 229 (C.M.A.1985).

This court has noted in a number of cases that errors in instructions to court members can be avoided by following the Benchbook. We are at a loss to understand the reluctance of some military judges to do so. Much unnecessary appellate litigation is generated because the Benchbook has not been followed. We again exhort military judges to follow that time-tested document.

The remaining assertions of error, to include those personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are also without merit.

The finding of guilty of Specification 3 of Charge V is set aside. Specification 3 of Charge V is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the sentence is affirmed.

Judge GONZALES concurs.

GRAVELLE, Judge, dissenting.

I agree with the disposition of all assignments of error in this case, except that regarding the military judge's misstatement of one sentence in the reasonable doubt instruction.[1] While he correctly defined the term, he also, in effect, informed the members that they could harbor a fair and rational hypothesis or theory of innocence and still convict the appellant. In this fully-contested case, I simply cannot say that the error in such a critical instruction is harmless beyond a reasonable doubt. Reluctantly, I conclude that the findings of guilty and sentence must be set aside and a rehearing authorized.

5. This court attempted to obtain the tape recordings from which the record of trial was transcribed to determine if this was an error in transcription. The Clerk of the Court was informed by the Navy court reporter who was provided for this trial that it was her practice to erase tapes of trial by court-martial after one year. She followed that practice in this case and erased the tapes. We caution those responsible for preparation of records of trial, that tape recordings of trial by courts-martial such as appellant's, should be kept until appellate review is complete. *See* Army Reg. 27–10, Legal Services: Military Justice, para. 5–32 (22 Dec.

1989); § 0150b, Manual of the Judge Advocate General of the Navy, JAG Instruction 5800.7c (3 Oct 1990).

1. In comparing the overall reasonable doubt instruction given by the military judge in this case with that contained in the Benchbook, it is clear that he deviated from other portions of it as well. I wholeheartedly agree with the majority opinion in counselling against any deviation from the Benchbook. This advice is especially true when an instruction as critically important as the reasonable doubt instruction is involved.