UNITED STATES

v.

**Sandra D. WHITE, 078–58–1139, Mess Management Specialist Second Class (E–5), U.S. Navy.**

**NMCM 96 00235.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 3 Aug. 1995.

Decided 30 Jan. 1997.

CDR C.J. Cooper, JAGC, USN, Appellate Defense Counsel.

MAJ Stephen P. Finn, USMC, Appellate Government Counsel.

MAJ J. Steve Hinkle, USMCR, Appellate Government Counsel.

Before DOMBROSKI, LUCAS and OLIVER, JJ.

DOMBROSKI, Chief Judge:

This case comes to us for review under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1994)[hereinafter UCMJ]. Once again, we consider issues raised in the context of an appellant's receipt of basic allowance for quarters (BAQ) and variable housing allowance (VHA) which the appellant

was not entitled to receive. At a special court-martial before a military judge alone, the appellant, a second class petty officer on her second enlistment, pled guilty, pursuant to the terms of a pretrial agreement, to dereliction in the performance of duty, signing a false official statement, stealing $7,794.51 [1] in BAQ and VHA allowances over a 14–month period, and making a false claim, in violation of Articles 92, 107, 121, and 132, UCMJ, respectively, 10 U.S.C. §§ 892, 907, 921, and 932. All the charges relate to the receipt of the BAQ and VHA funds. The military judge found the appellant guilty and sentenced her to confinement for 75 days, forfeiture of $569.00 pay per month for 6 months, reduction to pay grade E–1, and a bad-conduct discharge. In an undated action, the convening authority approved the sentence adjudged and, except for the bad-conduct discharge, ordered it executed. Before this court, the appellant raises four issues.[2] Only the first and second issues merit extended discussion.

### Facts

In the course of his inquiry into the providence of the appellant's guilty pleas,[3] the military judge, *inter alia*, advised the appel-

lant of the elements of larceny by wrongful obtaining under false pretenses as follows: [4]

> First, that on or about 9 December 1993 through February 1995, the accused wrongfully obtained certain property, that is, $8,277.09 [later amended, Record at 32, by exceptions and substitutions to $7,794.51] from the possession of the United States Government;
>
> The second element is, that the property belonged to the United States Government; The third element is, the property was of a value of $8,277.09 [later amended, Record at 32, by exceptions and substitutions to $7,794.51]; and
>
> Finally, four, that the obtaining by the accused was with the intent permanently to deprive or defraud the United States Government of the use and benefit of the property, or permanently to appropriate the property to the accused's own use or the use of someone other than the owner.

Record at 20. The military judge also gave the appellant the following definition:

> A "criminal false pretense" is any misrepresentation of a past or existing fact by an act, word, symbol or token by a person who knows it to be untrue, which is intended to deceive, which does, in fact, deceive, and which is the means by which the value

1. We note that the command judge advocate's post-trial recommendation and the special court-martial order erroneously reflect the value as "$7,7794.51." The same error also appears in the Appellate Government Counsel's Brief at 15. In that the convening authority noted in his action that he considered the entire record of trial in taking his action, we deem the error to be harmless. However, a corrected copy of the promulgating order should be distributed.

2. I. THE MILITARY JUDGE ERRED IN ACCEPTING THE APPELLANT'S GUILTY PLEA TO ADDITIONAL CHARGE II, LARCENY OF BAQ AND VHA PAYMENTS, BECAUSE THE PROVIDENCE INQUIRY DOES NOT ESTABLISH THAT THE APPELLANT WRONGFULLY OBTAINED BAQ AND VHA PAYMENTS DURING THE PERIOD FROM ON OR ABOUT 9 DECEMBER 1993 UNTIL 15 SEPTEMBER 1994.

II. THE MILITARY JUDGE ERRED IN ACCEPTING THE APPELLANT'S PLEA TO ADDITIONAL CHARGE I, DERELICTION OF DUTY, WHERE THE PROVIDENCE INQUIRY FAILED TO FACTUALLY ESTABLISH THE BASIS OF APPELLANT'S DUTY; FAILED TO ESTABLISH

HOW APPELLANT KNEW OF THIS DUTY; AND FAILED TO CONTRADICT THE STIPULATION OF FACT WHICH INDICATED THAT APPELLANT BELIEVED THERE WAS NO AFFIRMATIVE DUTY OR ACT REQUIRED BY HER TO STOP HER ENTITLEMENT.

III. THE RECORD OF TRIAL IS INCOMPLETE IN THAT IT DOES NOT CONTAIN A SUMMARY OF THE OUT OF COURT CONFERENCE HELD BY THE MILITARY JUDGE IN ACCORDANCE WITH RULES FOR COURT MARTIAL 802.

IV. AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS AN INAPPROPRIATELY SEVERE SENTENCE UNDER THE CIRCUMSTANCES OF THIS CASE.

3. RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.); *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

4. It is not clear to us from this record by what means or process the military judge determined that this was an obtaining by false pretense type of larceny. Neither counsel voiced any objection to the military judge's recitation of the elements.

is obtained from another without compensation. The misrepresentation must be an important factor in causing the owner to part with the property. The required misrepresentation of fact may exist by the silence of the accused or by the failure of the accused to correct a previous representation by notifying appropriate authorities and the accused has a legal duty to so correct the previous representation.

Record at 20–21. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 46c(1)(e)[hereinafter MCM]; *United States v. Johnson,* 39 M.J. 707 (N.M.C.M.R.1993); *United States v. Dean,* 33 M.J. 505, 511 (A.F.C.M.R.1991). The appellant acknowledged her understanding of the elements of this and the other offenses to which she pled guilty and that the elements correctly described what she did.

In addition to a stipulation of fact, Prosecution Exhibit 1, received in evidence by the military judge after appropriate inquiry of the appellant, the appellant admitted that, prior to 9 December 1993, she lived in civilian off-base housing with her two dependent children and her husband, also a Sailor, was receiving BAQ and VHA, and that in a BAQ/Government Quarters/Dependent's Certification of 25 January 1993, she took affirmative action in writing to certify her eligibility to receive the allowances. The appellant further indicated that on 9 December 1993 she moved with her family from civilian housing to Navy government housing, provided free of charge to her; that she then knew that she would no longer be entitled to receive the BAQ and VHA allowances. She acknowledged that she should inform government authority that she had moved into government housing and was no longer entitled to the allowances. Record at 26.

The military judge observed, "I think in your Stipulation of Fact that at first you thought it would be an automatic function. Is that right." The appellant responded, "Yes, sir." *Id.* It was then established that the appellant knowingly continued to receive BAQ and VHA payments until February 1995, while residing in government quarters the entire time. The appellant again acknowledged that she knew she was not entitled to the $7,794.51 in allowances she received during the period. The appellant admitted that during the period, on 14 September 1994, she signed a new BAQ/Government Quarters/Dependent's Certification, falsely certifying that she possessed a valid rental agreement, lease, or mortgage, intending to deceive the Government and continue receiving allowances she was not entitled to receive (which amounted to $571.00 per month). This later certification provided the basis for the Article 107 and 132, UCMJ, 10 U.S.C. § 907 and 932, charges.

The appellant admitted that she knew she was being overpaid in the amount of the BAQ and VHA allowances, and that while initially thinking that the disbursing office would automatically stop the allowances when she moved into government quarters, upon receiving the first two pay checks after moving into government quarters in December 1993, she knew that the Government was not going to automatically stop the BAQ and VHA payments. Nevertheless, she took no action to notify anyone in her chain of command or anyone else. Record at 39. Further, in discussing the dereliction charge, the appellant admitted that she had a duty to step forward, and in not doing so, she specifically intended the result—continued receipt of BAQ and VHA payments to which she was not entitled. Record at 40.

With specific reference to the larceny charge, the appellant admitted that the BAQ and VHA payments she received without entitlement totaled $7,794.51, and that she obtained them by false pretense and with a larcenous intent. Record at 41. The appellant further acknowledged that after the certification of entitlement she made in January 1993, she had a duty to take action when her entitlement ended but instead remained silent, that silence amounting to a misrepresentation of her continued entitlement. Record at 42.

## Issue I

■ In the first assignment of error, the appellant asserts that the military judge erred in accepting the appellant's pleas of guilty to the larceny charge, because the

providence inquiry did not establish the wrongfulness of appellant's obtaining the BAQ and VHA payments between 9 December 1993 and 15 September 1994. The false recertification of entitlement occurred on 14 September 1994, and the payments continued until February 1995.

The appellant places major reliance on the Army Court of Criminal Appeals decision in *United States v. Watkins*, 32 M.J. 527 (A.C.M.R.1990), characterizing the facts in that case and the case at bar as "almost identical." Appellant relies on *Watkins* for the proposition that merely failing to inform military authorities as to an overpayment of pay or allowances does not make a service member criminally liable under Article 121, UCMJ, 10 U.S.C. § 921. We do not view *Watkins* as dispositive of appellant's case.

The facts in *Watkins* are readily distinguishable. First, the prosecution had proceeded on a wrongful withholding theory of larceny. Citing a number of precedents, the Army Court stated that "[i]n the absence of a fiduciary duty to account, a withholding of funds otherwise lawfully obtained is not larcenous." 32 M.J. at 529. Equally important is the factual distinction that Watkins reported the overpayments. The Court stated: "The appellant's statement that she reported the overpayments to the housing office on two occasions is inconsistent with *mens rea* and warrants rejection of her [guilty] plea." *Id.*

In addition to the factual differences in the cases, the precedential value of the *Watkins* legal analysis may have been substantially eroded by the U.S. Court of Military Appeals (renamed the U.S. Court of Appeals for the Armed Forces) later decisions in *United States v. Antonelli*, 35 M.J. 122 (C.M.A.1992) [*Antonelli I* ], and *United States v. Antonelli*, 43 M.J. 183 (1995) [*Antonelli II* ]. As stated by the Court itself, the key legal principle of the *Antonelli* case is the following:

> The allowances in question were property of the United States that had been delivered to Antonelli soley to defray the financial burden of supporting a dependent child. Such an allowance is not salary and is clearly distinguishable from salary. Inasmuch as Antonelli was in fact *not* paying

support for his daughter, he was not entitled to the allowances therefor; *thus, those monies remained the lawful property of the United States.*

*Antonelli I*, 35 M.J. at 127–28 (footnote omitted, second emphasis added), *quoted in Antonelli II*, 43 M.J. at 184.

Like the accused in *Antonelli*, the appellant in this case knowingly received allowances delivered solely for the purpose of defraying the costs of civilian housing for the appellant and her dependents, while at the same time she resided in rent-free, government-provided housing. The appellant clearly knew she was not entitled to the allowances she continued to receive, and she did not use them for their intended purpose. The monies remained the lawful property of the United States. The providence inquiry and the stipulation of fact fully establish the appellant's *mens rea* and her intent to steal these funds. We perceive no inconsistency as to appellant's intent with the recitation contained in the stipulation of fact that states: "MS2 White believed that when she moved into government housing, disbursing would automatically stop giving her BAQ/VHA payments." Prosecution Exhibit 1. Whatever the appellant may have thought initially, she acknowledged in the providence inquiry that after two pay periods, it was evident to her that the payments were continuing and were not going to stop without some action on her part. Appellant's later false recertification of her entitlement to the allowances in September 1994 only reinforces her admissions as to her criminal intent and the wrongfulness of her continued receipt of allowances throughout the period charged. As the Court noted in *Antonelli*, even assuming the validity of a proposition that one who merely accepts allowances to which he is not entitled is indebted to the United States but not necessarily criminally liable, "it does not lead to a similar conclusion of non-criminality when that member takes affirmative steps to throw authorities off the scent when they look into his eligibility . . . ." *Antonelli II*, 43 M.J. at 185.

An appropriate analogy is where a bank's automatic teller machine malfunctions. One who requests a $100.00 withdrawal from his

bank account containing $150.00, then celebrates his good fortune by quickly spending the money on himself when the machine dispenses $10,000.00 in response to the withdrawal request, will not be heard to say that the money was his to spend or that he did nothing wrongful in keeping and spending the money. *See Antonelli I,* 35 M.J. at 131 (Crawford, J., concurring in the result). Clearly, the allowances were paid in error to the appellant, she knew it and chose to continue to accept the allowances, taking no action to correct the matter but instead electing later to recertify falsely her entitlement. This is larceny.

Additionally, we find that the appellant's silence, far from being innocent, constituted the false pretense inherent in a wrongful obtaining type of larceny. In *United States v. Johnson,* 39 M.J. 707 (N.M.C.M.R.1993), *aff'd,* 40 M.J. 318 (C.M.A.1994), the accused was lawfully receiving BAQ and VHA allowances, then lost his entitlement when he was divorced from his wife and moved into the military barracks. He remained silent about his change in marital status, intending to keep the allowances he continued to receive despite his ineligibility. Citing *United States v. Viverito,* 34 M.J. 872, 875 n. 2 (A.C.M.R. 1992), *pet. denied,* 36 M.J. 76 (C.M.A.1992), and *United States v. Dean,* 33 M.J. 505 (A.F.C.M.R.1991), this court held:

> [Guilty pleas to stealing BAQ and VHA] are provident under a theory of wrongful obtaining by false pretenses where an accused (1) admits he has a legal duty to correct a previous representation by notifying appropriate authorities; (2) fails to do so; and (3) has the requisite criminal *mens rea* at the time of the obtaining.

*Johnson,* 39 M.J. at 708. The appellant's false pretense in obtaining allowances after moving into government quarters arose from her silence when she clearly knew that disbursing officials were continuing to pay BAQ and VHA, which she knew she was not enti-

tled to receive, relying on her earlier January 1993 certification of eligibility for continuing the disbursements. The appellant admitted she had a duty to step forward and failed to do so, intending to steal the allowances. Every Sailor and Marine is under a legal obligation to protect Government assets.[5] The appellant clearly did not do so. By completing and submitting the false recertification of eligibility in September 1994, the appellant did an affirmative act which constituted an additional, new false pretense.

Nothing this Court decided in *United States v. Gray,* 44 M.J. 585 (N.M.Ct.Crim. App.1996), which the appellant cites, is at variance with *Johnson* or our analysis in this case. First, *Gray* is distinguishable on its facts. It was a contested case in which the appellant pleaded not guilty to stealing BAQ and VHA. In distinguishing *Johnson,* we noted in *Gray* that Johnson alone had firsthand information regarding his divorce and his resulting disentitlement to allowances he had been receiving. In *Gray,* we found factual insufficiency in the proof that Gray had any affirmative duty to report, *"before he became aware that the housing office had not reported* [the change in his status]." *Id.* at 587. More importantly, unlike Johnson and unlike the appellant in this case, Gray denied any intent to steal. In fact, there was evidence that Gray had been overpaid before, and he simply waited for the Navy to recoup the money, which occurred without any disciplinary action being taken. Finally, and again unlike the appellant in this case, Gray never took any action to continue payments he was not entitled to receive. In summary, the Court in *Gray* was not convinced beyond a reasonable doubt, as a matter of fact, that Gray "had the *mens rea* necessary for a violation of Article 121." *Id.* at 588.

 Before a guilty plea will be overturned on appeal, there must exist a substantial basis on the record in law and fact for doing so. *United States v. Vega,* 39 M.J. 79,

---

5. Section 901a, Chapter IX of Secretary of the Navy Instruction 5370.2J dated 15 March 1989 states: "NAVAL PERSONNEL SHALL NOT DIRECTLY OR INDIRECTLY USE, TAKE, DISPOSE OF, OR ALLOW THE USE, TAKING, OR DISPOSING OF GOVERNMENT MANPOWER, PROPERTY, FACILITIES, OR INFORMATION OF ANY KIND, INCLUDING PROPERTY LEASED TO THE GOVERNMENT, FOR OTHER THAN OFFICIAL GOVERNMENT BUSINESS OR PURPOSES." The rule is punitive, and violation may be charged as a failure to obey a general regulation under Article 92, UCMJ.

81 (C.M.A.1994)(citing *United States v. Prater*, 32 M.J. 433 (C.M.A.1991)); *United States v. Logan*, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3, 1973 WL 14641 (1973). On the record before us, the appellant's guilty pleas to larceny of BAQ and VHA were provident and properly accepted by the military judge. There exists no substantial basis for overturning the guilty pleas and findings as to the larceny charge. The first assignment of error is without merit.

## Issue II

█ In her second assignment of error, the appellant claims that her guilty plea to the charge of dereliction of duty was improvident because the providence inquiry, *inter alia*, failed to factually establish the basis of appellant's duty. We find that this claim has merit.

The specification alleged that the appellant, knowing of her duty to notify the Disbursing Officer USS L.Y. SPEAR that she was receiving unauthorized BAQ and VHA payments, was derelict in the performance of duty in that she willfully failed to inform the Disbursing Officer that she was residing in government housing and was not eligible to receive BAQ and VHA payments.

In the course of the providence inquiry, the military judge advised the appellant of the elements of the offense, the first element being that "the accused had a certain prescribed duty, that is, to notify the Disbursing Officer, USS L.Y. SPEAR, that she was receiving unauthorized BAQ and VHA payments." Record at 19. In discussing the factual basis for the appellant's pleas, Record at 36 *et seq.*, the military judge never established the source of this *certain prescribed duty to notify the Disbursing Officer.*

This is a specifically-described duty—notifying the Disbursing Officer. The source of a duty may be a treaty, statute, regulation, order, standard procedure, or custom of the service. MCM, Part IV, ¶ 16c(3). On the record before us, we have not been made aware of any source for this specific duty to notify an officer occupying a specific billet on the ship. Sailors and Marines learn that official communications are to be made up through their chain of command, which for

the appellant would have started with a leading petty officer or division chief petty officer or division officer, then up to the executive officer and commanding officer.

In finding that the appellant's guilty plea to the larceny charge was provident, we noted that every Sailor and Marine is under a legal obligation to protect Government assets and would have a duty to step forward and notify authorities if they were receiving monies from the Government they were not entitled to receive. But under the dereliction charge, the Government chose to make a very specific charge of failing to report *to the Disbursing Officer.* During the providence inquiry, the military judge asked the appellant the following question: "Did you also appreciate that every time that you received a paycheck in that time frame you had the affirmative duty, the affirmative *prescribed* duty to notify the Disbursing Officer of USS L.Y. SPEAR that you had been overpaid." Record at 37. While the appellant replied in the affirmative, we cannot find any source for this specifically-prescribed duty.

It could well be that a ship's instruction or operating procedure set forth such a duty. We have no way of knowing. All we decide here is that the record before us is insufficient to support the factual basis for appellant's guilty plea. On that basis, we will set aside the findings of guilty as to the charge and specification of dereliction of duty.

## Issues III and IV

We find no merit in the appellant's third and fourth assignments of error.

█ During the providence inquiry, the military judge recessed the court at the request of the defense counsel for an R.C.M. 802 conference. Record at 31. This occurred during a colloquy the military judge was conducting with counsel and the appellant as to the beginning and ending dates for the appellant's occupying government quarters and the calculation of the dollar value of BAQ and VHA, to determine the factual accuracy of the amount alleged in the larceny specification. When the court was called back to order, the appellant amended her plea to the larceny specification, substituting

a lesser amount for the amount alleged. The military judge clearly stated that what was agreed upon during the conference was the ending date for the calculations. Record at 32.

We find that the purpose of the conference was obvious from the record, matters agreed upon were adequately described by the military judge on the record, and absent any objection at trial, any error was waived. R.C.M. 802(b). The third assignment of error is without merit.

 Finally, the appellant argues that an unsuspended bad conduct discharge is an inappropriately severe sentence in the circumstances of her case. While we are mindful of the appellant's outstanding record of service prior to these offenses, we have no difficulty in concluding that the sentence is not inappropriately severe for the offenses and for this appellant. Disapproval or suspension of the adjudged and approved bad-conduct discharge would be an act of clemency, which is not the function of this court. "Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). Congress has assigned this court only the task of determining sentence appropriateness. It has placed the responsibility for clemency in other hands. *Id.* at 395–96.

While it is indeed tragic to see the consequences of this promising petty officer's misconduct, we could not state the case any better than she articulated it at trial: "I thought I was slick and would never get caught, but to my avail [sic] I destroyed the greatest opportunity of my life, my Navy career." Record at 77. This is not an uncommon lament of those whose careers go aground on the shoals of a court-martial.

The fourth assignment of error is without merit.

### Decision

In setting aside the findings of guilty as to the dereliction of duty charge and specification, judicial economy dictates that we dismiss that charge and specification. In reassessing the sentence, we are quite confident that the dereliction charge added nothing to the military judge's sentence in this case, in light of the military judge's observations in ruling on the defense motion regarding multiplicity of the charges. Record at 11–12.

The findings of guilty of Additional Charge I and the Specification thereunder are set aside, and Additional Charge I and its Specification are dismissed. The remaining findings of guilty are affirmed. Upon reassessment of the sentence, we find the sentence appropriate for the remaining offenses and for this appellant. *United States v. Jones*, 39 M.J. 315 (C.M.A.1994). Accordingly, the sentence, as approved on review below, is affirmed.

LUCAS and OLIVER, JJ., concur.